**THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **v.** | : | **3:21-CR-126** |
| | : | **(JUDGE MARIANI)** |
| **MICHAEL JONES, JR.,** | : | |
| | : | |
| **Defendant.** | : | |

**MEMORANDUM OPINION**

**I.  INTRODUCTION AND PROCEDURAL HISTORY**

On April 27, 2021, a federal grand jury indicted Defendant Michael Jones, Jr., in a

10-count Indictment, charging him as follows:

- Conspiracy to Distribute and Possess with Intent to Distribute Cocaine Base and Fentanyl in violation of 18 U.S.C. § 846 (Count 1);

- Possession with Intent to Distribute Cocaine Base in violation of 18 U.S.C. § 841(a)(1) (Counts 2, 4);

- Possession with Intent to Distribute Fentanyl in violation of 18 U.S.C. § 841(a)(1) (Counts 3, 5);

- Possession with Intent to Distribute Methamphetamine in violation of 18 U.S.C. § 841(a)(1) (Count 6);

- Possession of a Firearm in Furtherance of Drug Trafficking in violation of 18 U.S.C. § 924(c) (Count 7);

- Prohibited Person in Possession of a Firearm in violation of 18 U.S.C. § 922(g) (Count 8);

- Possession of a Stolen Firearm in violation of 18 U.S.C. § 922(j) (Count 9);

- Maintaining a Drug Involved Premises in violation of 21 U.S.C. § 856(a)(2) (Count 10).

(Doc. 1).[1]

On October 4, 2021, Defendant Jones filed a Motion to Suppress Physical Evidence (Doc. 26) arising out of a traffic stop of his vehicle in Luzerne County by the Pennsylvania State Police on March 14, 2021. Following two evidentiary hearings, the Court denied Defendant's motion on July 22, 2022 and scheduled this case for trial. (*See* Docs. 58-60).

Following the appointment of new counsel for Defendant, the Court permitted Defendant to file additional pre-trial motions. (Doc. 96; *see also*, Docs. 72, 73). Defendant thereafter filed the following four pre-trial motions:

- Motion to Suppress Evidence – Warrantless Searches & Seizures (Doc. 97);

- Motion to Suppress Evidence – Arrested Without Probable Cause (Doc. 99);

- Motion to Suppress Evidence – Insufficient Nexus (Doc. 101);

- Motion to Suppress Evidence – Search Warrant Overbroad (Doc. 103).

Presently before the Court are Defendant's Motions to Suppress Evidence on the basis of Insufficient Nexus (Doc. 101) and Search Warrant Overbroad (Doc. 103). For the reasons that follow, Defendant's Motions will be denied.

---

[1] Counts 1, 2, and 4 of the Indictment were amended on June 15, 2022, to reflect that the cocaine seized from Jones' vehicle and residence was cocaine, not cocaine base. (*See* Doc. 21).

## II. ANALYSIS

Both of Defendant's pre-trial motions arise out of the contents of an Application for the Search Warrant and supporting Affidavit, which requested to search a residence at 325 High Street in Wilkes-Barre, Pennsylvania. The search warrant was issued on March 15, 2021, by Magisterial District Judge Richard Cronauer, the day after Defendant's vehicle was stopped in Luzerne County and Defendant was detained.

Defendant's Motion to Suppress Evidence on the basis of Insufficient Nexus (Doc. 101) asserts that any evidence seized from the High Street address "should be suppressed because the Affidavit of Probable Cause submitted in support of the Search Warrant lacked a sufficient nexus linking the crime to the place to be searched to justify a finding of probable cause." (Doc. 101, ¶ 7). Jones further argues that the Affidavit's request for a search warrant to "look for U.S. Currency" (*see* Doc. 109-1, Aff. of Probable Cause, at 3) "was so lacking in indicia of probable cause as to render official belief in its existence unreasonable. . . and thus the Good Faith Exception to the Exclusionary Rules does not apply" (Doc. 101, ¶ 8).

Defendant's Motion to Suppress Evidence on the basis of "Search Warrant Overbroad" (Doc. 103) similarly challenges the identification of the items to be searched for and seized as "US Currency". Specifically, Jones argues that "US Currency" "does not satisfy the particularity requirement of the Fourth Amendment" and that the Search Warrant "was so facially deficient that the executing officers, WBPD Ference and PSP Lamm could

not presume it to be valid".  (*Id.* at ¶¶ 7, 8).

Here, the Application for Search Warrant, applied for by Jeffrey Ference and Jeffrey Lamm, identifies the items to be searched for and seized as "US Currency".  (Doc. 109-1, at 1).  The Application seeks to search 325 High Street in Wilkes-Barre, PA, and lists Michael Jones as the owner, occupant, or possessor of the premises.  (*Id.*).  The Application further identifies a violation of Act 64 and Pennsylvania Crimes Code Title 18, allegedly committed on March 14-15, 2021.  (*Id.*).  The Application states that the Warrant Application was approved by phone by Assistant District Attorney Drew McLaughlin.  (*Id.*).

According to the supporting Affidavit of Probable Cause, Lamm has been a member of the Pennsylvania State Police for 22 years, has been assigned to the Troop P Vice/Narcotics Unit for 18 years, has received "additional narcotics training" through various state and federal agencies, and has "been involved in hundreds of arrests and investigations and has prosecuted 100s of cases" in state and federal courts.  (Doc. 109-1, at 2).  Ference has worked as a Law Enforcement Officer in Luzerne County since 2001 and has been employed by the Wilkes-Barre Police Department since 2009.  Ference has been assigned that the Luzerne County Drug Task Force since 2017 and, at the time of the Affidavit, was assigned as a Task Force Officer with the ATF.  Ference has attended "numerous training and advancement courses focusing on street crimes, fugitive apprehension/location, and narcotics investigations", has "cultivated informants, conducted interviews, participated in surveillance and participated in controlled purchases."  (*Id.*).

4

The Affidavit also sets forth the following factual sequence of events:

On March 14, 2021 at approximately 1820 hours a traffic stop was conducted by PA State Police Cpl. Mark CONRAD, BESO K-9, at Exit #1 off of SR 115 north bound Wilkes-Barre City, Luzerne County on a black Nissan Altima bearing PA registration LGL3508 for a traffic violation.

Clinton COLE was operating the vehicle without a valid license. The front seat passenger and registered owner of the vehicle was identified as Michal [*sic*] JONES Jr. During the traffic stop, numerous indicators indicative of drug trafficking were observed by CONRAD. Both the driver and passenger were discovered to be traveling from a source city of Philadelphia. They provided conflicting stories as to how many days they were in Philadelphia. Both occupants were extremely nervous and their nervousness increased throughout the stop. COLE explained that he has no luggage or items for a several day trip to Philadelphia. Based upon the multiple indicators of criminal activity discovered during the traffic stop, Cpl. CONRAD believed that the occupants were currently engaged in criminal activity, specifically transporting narcotics to the Wyoming Valley from Philadelphia.

Consent to search was requested and granted. During the search, JONES withdrew consent. At this time, both COLE and JONES Jr. were detained and the vehicle was towed to Wilkes-Barre City Police Department. Affiants LAMM and FERENCE, as well as Cpl. CONRAD, requested a search warrant, which was applied for and granted.

A search of the vehicle revealed approximately 314 grams of suspected crack cocaine, 59 grams of suspected fentanyl, 5 grams of suspected synthetic marijuana, 13-50 ml bottles of Xylazine, 2 digital scales, and a large amount of packing material hidden in a speaker box inside the trunk of the vehicle. Both COLE and JONES Jr. were advised that they were being arrested for drug violations and taken to the Wilkes-Barre Police holding facility.

Field tests were conducted on the substances recovered from the vehicle and they tested positive for cocaine and a heroin/fentanyl mixture.

Prior to transport to the Luzerne County Correctional Facility, JONES made a telephone call in the presence of Ofc. K. NOVACKOWSKI. In that call believed to be a female paramour, Ofc. NOVACKOWSKI heard JONES direct the female to take $12,000 from a box in the top shelf of a closet and put it on his books

because he was going upstate.

A cooperating witness, hereafter referred to [as] CW#1, was interviewed at police headquarters on March 15, 2021 by Affiants LAMM and FERENCE. CW#1 said they have been selling heroin/fentanyl for JONES since December. CW#1 said JONES sells "everything" and JONES indicated he keeps profits from those sales in a house different from his government address of 253 Stanton St.  CW#1 described the secondary residence as the "lab."

Officers were able to confirm through UGI that JONES has paid utility bills at 325 High St. since October of 2020.  Law enforcement independently confirmed he was at that location prior to this incident.

Also on March 15, 2021, Affiants LAMM and FERENCE interviewed another cooperating witness, hereafter referred to as CW#2.  During that interview, CW#2 said JONES told CW#2 if he/she ever needed money and JONES was incarcerated, JONES kept his money inside 325 High St., Wilkes-Barre City. CW#2 also indicated JONES is unemployed and knows his sole source of income to be illicit narcotics dealing.

Affiants know through training, education and experience that it is common for drug dealers to keep proceeds from narcotics trafficking as well as product away from their official address.  In JONES' case, this is further substantiated by JONES currently bring under the supervision of PA State Police and would be subject to residence checks and/or searches.  JONES would need another location to store/conceal unreported income or contraband as a result.

Affiants are requesting a search warrant for 325 High St. to look for U.S. Currency which was obtained through the illicit sales of narcotics.

(Doc. 109-1, at 1-2).

Jones' Motions to Suppress (Docs. 101, 103) both allege that the evidence seized at 325 High Street pursuant to the signed search warrant must be suppressed due to violations of Defendant's Fourth Amendment rights.  The Fourth Amendment guarantees that:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.  "To find probable cause to search, there needs to be a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).  Probable cause is a "fluid concept" that is fact-specific and "not readily, or even usefully, reduced to a neat set of legal rules."  *United States v. Jones*, 994 F.2d 1051, 1056 (3d Cir. 1993) (quoting *Gates*, 462 U.S. at 232).

Where a court is presented with a challenge to a magistrate judge's determination of probable cause in the issuance of a warrant, it must limit its review to an inquiry of whether "the magistrate had a substantial basis for concluding that probable cause existed."  *Id.* at 1055.  Although "[a] magistrate's determination of probable cause should be paid great deference by reviewing courts", *Gates*, 462 U.S. at 236 (citations omitted), a reviewing court "should [not] simply rubber stamp a magistrate's conclusions", *United States v. Zimmerman*, 277 F.3d 426, 432 (3d Cir. 2002).  The court must read the affidavit of probable cause submitted in support of the search warrant in its entirety and "in a commonsense and nontechnical manner."  *United States v. Whitner*, 219 F.3d 289, 296 (3d Cir. 2000) (citing *United States v. Conley*, 4 F.3d 1200, 1206 (3d Cir 1993)).  "In making this determination, the Court confines itself 'to the facts that were before the magistrate judge, i.e., the affidavit,

and [does] not consider information from other portions of the record.'" *Id.* (quoting *Jones*, 994 F.2d at 1055).

Jones' first Motion – "Motion to Suppress Evidence [due to] Insufficient Nexus" (Doc. 101) – argues that "any evidence seized from the 325 High Street, Wilkes-Barre residence should be suppressed because the Affidavit of Probable Cause submitted in support of the Search Warrant lacked a sufficient nexus linking the crime to the place to be searched to justify a finding of probable cause." (Doc. 102, at 4).

Here, to uphold Magisterial District Judge Cronauer's determination of probable cause, the Court must determine whether he had a substantial basis to conclude that U.S. Currency, obtained through the illegal sales of narcotics, would be found at the 325 High Street residence. The Court finds that in issuing the search warrant for 325 High Street, Magisterial District Judge Cronauer had a sufficient basis to conclude probable cause so existed.

As previously noted, to find probable cause to search, there must be "a fair probability that contraband or evidence of a crime will be found in a particular place." *Burton*, 288 F.3d at 103. This analysis focuses on the nexus between the illegal activity and the place to be searched. *Id.* "If there is probable cause to believe that someone committed a crime, then the likelihood that that person's residence contains evidence of the crime increases." *Jones*, 994 F.2d at 1055-56. More specifically, it is reasonable for a magistrate judge to infer that drug-related evidence will be found at the residence of an

8

individual involved in drug dealing. *United States v. Hodge*, 246 F.3d 301, 306 (3d Cir. 1993); *see also Whitner*, 219 F.3d at 298 (collecting cases).

It is well settled that "direct evidence linking the residence to the criminal activity is not required to establish probable cause." *Burton*, 288 F.3d at 103. "[P]robable cause to search can be based on an accumulation of circumstantial evidence that together indicates a fair probability of the presence of contraband at the home of the arrested." *Id.*; *see also Jones*, 994 F.2d at 1056 (explaining that "probable cause can be, and often is inferred by considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide stolen property.") (internal citations and quotations omitted).

In this case, the Affidavit of Probable Cause contains the necessary circumstantial evidence to establish a nexus between Defendant Jones and the residence at 325 High Street and the evidence included therein demonstrates that Magisterial District Judge Cronauer had more than sufficient grounds to find that probable cause existed.

While there is "a reasonable inference to conclude that drug dealers often store evidence of drug crimes in their residences, application of this inference is based on evidence supporting three preliminary premises: (1) that the person suspected of drug dealing is actually a drug dealer; (2) that the place to be searched is possessed by, or the domicile of, the dealer; and (3) the home contains contraband linking it to the dealer's drug activities." *Burton*, 288 F.3d at 104.

With respect to Defendant Jones' connection to illegal narcotics, the Affidavit of Probable Cause details the events of March 14, 2021, wherein a traffic stop of Cole and Defendant Jones resulted in the Defendant's vehicle being towed to the Wilkes-Barre City Police Department due to "multiple indicators of criminal activity", specifically the transportation of narcotics.  A search of the vehicle at the Police Department resulted in the discovery of a significant amount of crack cocaine, fentanyl, synthetic marijuana, Xylazine, and drug paraphernalia including "a large amount of packing material".  (Doc. 109-1, at 2). The Affidavit further asserts that CW#1 told the affiants that he/she had been selling heroin/fentanyl for Jones since December and that CW#2 informed the affiants that Jones' sole source of income was from illicit narcotics dealing, statements which corroborate each other that Jones was involved in the sale and distribution of illegal drugs.  (*Id*. at 3).  These facts, taken together, all reasonably suggest that Jones was a drug dealer and engaging in the repeated distribution and sale of illegal drugs and Magisterial District Judge Cronauer thus had a substantial basis to conclude that Defendant was a drug dealer.  *See Hodge*, 246 F.3d at 306 (finding that "the facts surrounding Hodge's arrest suggest that he was an experienced drug dealer who was operating a drug business" where, in part, (1) the amount of drugs Defendant possessed indicated that he was selling drugs, rather than only using them, and (2) a tip by an informant was corroborated by "what actually happened", suggesting that Defendant's drug activities were organized and Defendant "was sufficiently involved in the drug trade that others knew of his activities").

The Affidavit of Probable Cause, in addition to providing information relating to the transportation and sale of illegal narcotics by Jones, sets forth evidence indicating a fair probability that U.S. currency obtained as a result of the sale of illegal narcotics would be found at the 325 High Street residence. The Affidavit details one-side of a telephone conversation heard by Officer Novackowski at the Luzerne County Correctional Facility, after Jones was informed that he was being arrested, wherein the police officer heard Jones direct an individual to take $12,000 from a box in the top shelf of a closet and put it on his books because he was "going upstate." (Doc. 109-1, at 3). Lamm and Ference were informed by CW#1 that Jones had indicated to him/her that he kept profits from drug sales in a house different from his government address of 253 Stanton St. Additionally, CW#2 told Lamm and Ference that Jones had stated that if he/she ever needed money and Jones was incarcerated, Jones kept his money inside 325 High St., Wilkes-Barre City. Officers confirmed through UGI that Jones had paid utility bills at 325 High St. since October of 2020, to wit, for at least the last five months prior to his March 14, 2021 arrest.[2]  (Id.). This information was further supported by the affiants' knowledge that Jones was, at that time,

---

[2] Although Defendant argues that the affidavit does not assert or establish that CW#1 and CW#2 are reliable and that their conclusions were not corroborated (see Doc. 102, at 6-7), this assertion is discredited when looking at the Affidavit as a whole. Here, CW#2's statement that Jones kept his money at 325 High St., Wilkes-Barre City was corroborated by police officers who were able to confirm through UGI that Jones had paid utility bills at 325 High St. for at least the last five months. See e.g. Whitner, 219 F.3d at 298 (". . . an informant, Tamara Liggins, whose answers to the agents' questions were corroborated by independent investigation, and thus was demonstrated to be reliable, told the agents that Whitner resided in the Monroeville apartment.") (emphasis added).

under the supervision of PA State Police and would be subject to residence checks and/or searches, a fact which reasonably supports a likelihood that Jones would need another location to store any unreported income and his contraband.  Viewed in a commonsense manner, the facts and inferences derived therefrom could reasonably lead the magisterial judge to find that Defendant either possessed or was domiciled at 325 High Street.

The above-stated information, together with the information in the Affidavit of Probable Cause setting forth the extensive experience and training of Lamm and Ference in narcotics and drug trafficking investigations as well as their knowledge through "training, education and experience that it is common for drug dealers to keep proceeds from narcotics trafficking as well as product away from their official address", (Doc. 109-1), establishes the required nexus linking the presence of U.S. currency to the 325 High Street address to justify a finding of probable cause.[3]

_____

[3] The Court notes that a magistrate "'is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense.'" *Hodge*, 246 F.3d at 305-06 (quoting *Whitner*, 219 F.3d at 296).  The magistrate judge "may give considerable weight to the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *Whitner*, 219 F.3d at 296.  In this case, the affiants are experienced law enforcement officers with significant experience and training in the investigation of drug-related crimes. (Doc. 109-1, at 2).  The affiants explained where suspected drug traffickers and manufacturers often keep evidence, what type of evidence is generally recovered (controlled substances, firearms, and currency), and they described other commonalities among those in the drug trade that they had reason to believe would be present in this case as well.  (*Id.* at 2-3); *see United States v. Walker*, 776 F. App'x. 784, 786 (3d Cir. 2019) ("Finally, the affidavit provides that Weaver, an officer with substantial experience and specialized training in narcotics investigations, believed that the residence was being used for the storage and distribution of drugs.").

As a result, in examining the affidavit of probable cause submitted in support of the search warrant in its entirety and "in a commonsense and nontechnical manner," *Whitner*, 219 F.3d at 296, the Court determines that Magisterial District Judge Cronauer had a substantial basis for concluding that probable cause existed.

For these reasons, Defendant's Motion to Suppress on the basis of "Insufficient Nexus" (Doc. 101) will be denied.

With respect to Defendant Jones' Motion to Suppress Evidence on the basis of Search Warrant Overbroad (Doc. 103), Defendant argues that "US Currency", set forth as the item to be searched for and seized in the Search Warrant, is overbroad and "does not satisfy the particularity requirement of the Fourth Amendment".  (Doc. 103, ¶ 7).

Pursuant to the Fourth Amendment, "'a warrant may not be issued unless . . . the scope of the authorized search is set out with particularity.'" *United States v. Fattah*, 858 F.3d 801, 819 (3d Cir. 2019) (quoting *Kentucky v. King*, 563 U.S. 452, 459 (2011)).

> Particularity has three components: 'First, a warrant must identify the specific offense for which the police have established probable cause.  Second, a warrant must describe the place to be searched.  Third, the warrant must specify the items to be seized by their relation to designated crimes." *United States v. Galpin*, 720 F.3d 436, 445-46 (2d Cir. 2013) (citations omitted). Ultimately, the particularity requirement intends that 'nothing is left to the discretion of the officer executing the warrant.' *Marron* [*v. United States*, 275 U.S. 192, 196 (1927)].

*United States v. Perez*, 712 F.App'x 136, 138-139 (3d Cir. 2017).  A search warrant may incorporate a supporting affidavit "so long as the warrant cross-references the supporting document and the document accompanies the warrant."  *United States v. Yusuf*, 461 F.3d

374, 394 (3d Cir. 2006) (citing *Groh v. Ramirez*, 540 U.S. 551, 558 (2004)); *see also United States v. Dewald*, 361 F.Supp.3d 413, 417 (M.D.Pa. 2019).

Here, Defendant Jones admits that "[u]nder specific circumstances a deficiency in the description of the item to be seized can be cured where the affidavit in support of the search warrant particularly describes the item to be seized and the search warrant itself incorporates the affidavit into the warrant" but states, without any further argument or evidence, that "the affidavit in this case was not incorporated into the search warrant." (Doc. 104, at 5-6).

Defendant's unsupported claim is belied by the record.  On the search warrant application, Magisterial District Judge Richard Cronauer clearly signed below the following statement:

> WHEREAS, facts have been sworn to or affirmed before me by written affidavit(s) attached hereto from which I have found probable cause, I do authorize you to search the premises or person described, and to seize, secure, inventory and make return according to the Pennsylvania Rules of Criminal Procedure.

(Doc. 109-1, at 1); *see Dewald*, 361 F.Supp.3d at 417 n.20 ("Toward the bottom of the warrant, the issuing authority section explicitly references the affidavit, stating that 'facts have been sworn to or affirmed before me by written affidavit(s) attached hereto from which I have found probable cause . . .'").  In addition, Magisterial District Judge Cronauer also signed the bottom of each page of the probable cause affidavit.  (Doc. 109-1, at 2-3).  *See Dewald*, 361 F.Supp.3d at 417 ("Here, both the warrant and probable cause affidavit are

14

included in one, contiguous, [three-page] document titled Application for Search Warrant

and Authorization."). These factors thus "suggest that the affidavit is either part of the

warrant itself, attached to it, or incorporated by reference." *Id.* Therefore, the Court may

rely on Officers Ference and Lamm's affidavit of probable cause in evaluating the

sufficiency of the search warrant.

Jones further argues that "the Application for Search Warrant, and Search Warrant,

identif[y] the items to be searched for and seized simply as 'US Currency'" and that

"[s]everal courts have recognized that such generalized descriptions in a search warrant,

without more, fail to satisfy the particularity requirement of the Fourth Amendment." (Doc.

104, at 5). The cases cited by Defendant only assert that such a generalized description

may fail to satisfy the particularity requirement where there is not a supporting affidavit

incorporated by reference, or where a supporting affidavit which has been incorporated by

reference fails to adequately elaborate upon the items to be search for and seized. *See*

*United States v. Jones*, 54 F.3d 1285, 1290 (7th Cir. 1995) (Although the text of the warrant

itself described the object of the search as "U.S. Currency", which has "often been deemed

insufficient," where the warrant incorporated by reference the supporting affidavit which

contained the serial numbers of the currency sought, the particularity requirement was met);

*United States v. One Parcel of Prop. Located at 18 Perkins Rd.*, 774 F.Supp. 699 (D.Conn.

1991) (finding particularity requirement not met where warrant included "monies" among

items to be searched and supporting affidavit did not include any information about the

15

money at issue, including the sums of monies provided to a confidential witness or serial

numbers on the money, despite government having such information); *United States v.*

*Lucidonio*, 592 F.Supp.3d 381, 396-397 (E.D. Pa. 2022) (finding that, where supporting

affidavit was not incorporated by reference, the warrant's authorization of seizure of "All

cash" "is an overly broad description because it contains no limitation on which cash could

be seized nor provided details as to how 'all cash' at Tony Luke's and Tony Luke's

Commissary was connected with criminal activity"). In the present case, because the Court

has found that the Affidavit of Probable Cause was incorporated by reference, it may rely on

the statements therein in determining whether the warrant's authorization for the search and

seizure of "US Currency" is sufficiently particularized.

Upon review of the warrant and supporting affidavit, the Court finds that it is

sufficiently particularized.  The warrant specifies the place to be searched, specifically: "325

High Street; Wilkes-Barre, Pa 18702 . . . a two-story, single family residential structure with

light colored siding and the words 'Three Twenty Five' and numbers '325' on the front of the

property to identify it."  (Doc. 109-1, at 1).  The warrant further identifies the item to be

seized in relation to a designated crime, to wit, "US Currency".  The supporting affidavit

states that the affiants are requesting the search warrant for 325 High Street "to look for

U.S. Currency which was obtained through the illicit sales of narcotics" and details the basis

for the belief that the U.S. currency, obtained as the result of illegal drug activity, would be

found at the 325 High Street address.  Specifically, the Affidavit sets forth (1) a telephone

conversation heard by Officer Novackowski wherein Jones directed an individual to take a

specific amount of money, i.e. $12,000, "from a box in the top shelf of a closet and put it on

his books", (2) the statements of two cooperating witnesses indicating that Jones was

involved in ongoing illegal drug activity, (3) a cooperating witness' statement that Jones kept

his money at 325 High Street and that Jones' "sole source of income [was] illicit narcotics

dealing". (*See* Doc. 109-1, at 2-3). Finally, the warrant identifies "Act 64 and Pennsylvania

Crimes Code Title 18" as the offenses for which the police have established probable

cause. Although the Court recognizes that, on its face, this statement is exceedingly broad,

when read as a whole in conjunction with the affidavit of probable cause, it is apparent that

the criminal offenses at issue are not all offenses within "Act 64 and Pennsylvania Crimes

Code Title 18" but rather offenses in Act 64 and the Title 18 of the Pennsylvania Crimes

Code which are related to the unlawful possession and/or sale of one or more controlled

substances. *See United States v. Yusuf*, 461 F.3d 374, 394-395 (3d Cir. 2006)[4]; *United*

---

[4] In *Yusuf*, Defendants argued that that "the government did not narrow the categories of evidence sought to be searched because the warrant authorized the search for violations of broad federal statutes, including money laundering and various frauds, that encompass a wide-range of criminal conduct" and thus "the reference to these statutes, without any further limitation, transformed the warrants in this case into general warrants." 461 F.3d at 394. The Third Circuit, after reviewing the warrant application, concluded that:

> the warrants did not violate the particularity principle, as the warrants were limited in three respects: (1) they specified that agents were searching for evidence of several specifically enumerated federal crimes; (2) the search was limited in time to evidence from 1990 to the date of the search in October 2001; and (3) the evidence sought was limited to records pertaining to: "United Corporation d/b/a Plaza Extra, Plessen Enterprises, Inc., Hamdan Diamond Corp., Sixteen Plus Corp. and any affiliated companies as well as their principals, officers managers, and employees (including but not limited to Fathi Yusuf, Maher Yusuf, Waleed 'Wally' Hamed, and Waheed 'Willy' Hamed)."

*Id*. at 395.

States v. Karrer, 460 F.App'x 157, 161-162 (3d Cir. 2012) (rejecting Defendant's argument that the warrant failed to particularly describe the offenses for which evidence could be searched, and specifically that the warrant's reference to § 6318 of the Pennsylvania Crimes Code was inadequate to limit the warrant's scope because that statute is "extraordinarily broad," and finding that unlike in other cases where reference to a very broad statutory offense may not cure an otherwise general warrant, "§ 6318 does not invite the value judgments of officers" and instead, "although it is broad in scope and prohibits communicating with minors on an array of topics, it specifically defines those topics.").

The warrant's limitations as set forth herein make it clear that this search warrant is sufficiently particularized and not overbroad. Thus, Defendant's Motion to Suppress Evidence on the basis of Search Warrant Overbroad (Doc. 103) will be denied and the evidence seized as a result of the warrant will not be suppressed on these grounds.

Finally, the Court finds that even if it were to conclude that the search warrant was invalid for the reasons set forth by the defendant in one or both of his suppression motions, the evidence would not be suppressed due to the application of the good faith exception to the exclusionary rule.

The suppression of evidence based on a violation of the Fourth Amendment is governed by the exclusionary rule which is a prudential doctrine designed to enforce the Fourth Amendment. United States v. Werdene, 883 F.3d 204, 213 (3d Cir. 2018) (citing United States v. Martinez-Zayas, 857 F.2d 122, 136 (3d Cir. 1988); United States v. Franz,

772 F.3d 134, 145 (3d Cir. 2014)).  The exclusionary rule

> "prevent[s] the government from relying at trial on evidence obtained in violation
> of the [Fourth] Amendment's strictures." *Franz*, 772 F.3d at 145. However, the
> rule is *not* intended to remedy Fourth Amendment violations, and does not
> necessarily apply each time a violation occurs. *See Herring v. United States*,
> 555 U.S. 135, 140, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009). Put differently,
> "there is no constitutional right to have the evidentiary fruits of an illegal search
> or seizure suppressed at trial." *United States v. Katzin*, 769 F.3d 163, 170 (3d
> Cir. 2014) (en banc); *see Davis v. United States*, 564 U.S. 229, 236, 131 S.Ct.
> 2419, 180 L.Ed.2d 285 (2011) (noting that the Fourth Amendment "says
> nothing about suppressing evidence obtained in violation of [its] command.");
> *United States v. Leon*, 468 U.S. 897, 906, 104 S.Ct. 3405, 82 L.Ed.2d 677
> (1984) ("[T]he use of fruits of a past unlawful search or seizure 'work[s] no new
> Fourth Amendment wrong.'" (quoting *United States v. Calandra*, 414 U.S. 338,
> 354, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974))).
>
> Rather, the exclusionary rule aims to *deter* government violations of the Fourth
> Amendment. *See* [*United States v. Krueger*, 809 F.3d 1109, 1125 (10th Cir.
> 2015)] (Gorsuch, J., concurring) ("Even when an unreasonable search does
> exist, the Supreme Court has explained, we must be persuaded that
> 'appreciable deterrence' of police misconduct can be had before choosing
> suppression as the right remedy for a Fourth Amendment violation." (quoting
> *Herring*, 555 U.S. at 141, 129 S.Ct. 695) ); *see also Elkins v. United States*,
> 364 U.S. 206, 217, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) ("The [exclusionary]
> rule is calculated to prevent, not repair.").

*Werdene*, 883 F.3d at 215.

Under Supreme Court precedent, "the exclusionary rule encompasses both the

'primary evidence obtained as a direct result of an illegal search or seizure' and . . .

'evidence later discovered and found to be derivative of an illegality,' the so-called 'fruit of

the poisonous tree.'" *Utah v. Streiff*, 579 U.S. 232, 237 (2016) (quoting *Segura v. United

States,* 468 U.S. 796, 804 (1984)).  The "significant costs" of the exclusionary rule has led

the Supreme Court "to deem it 'applicable only ... where its deterrence benefits outweigh its

substantial social costs'" . . . and thus "'[s]uppression of evidence ... has always been our

last resort, not our first impulse.'" *Id*. at 237-238 (quoting *Hudson v. Michigan,* 547 U.S.

586, 591 (2006)).

> The good faith exception to the exclusionary rule

> instructs that suppression of evidence "is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority." [*United States v. Williams,* 3 F.3d 69, 74 (3d Cir. 1993)]. "The test for whether the good faith exception applies is 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate [judge's] authorization.'" [*United States v. Loy,* 191 F.3d 360, 367 (3d Cir. 1999)] (quoting *Leon*, 468 U.S. at 922 n. 23, 104 S.Ct. 3405). The mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception. *Leon,* 468 U.S. at 922, 104 S.Ct. 3405; *Williams,* 3 F.3d at 74. Yet there are situations in which an officer's reliance on a warrant would not be reasonable and would not trigger the exception. *Leon,* 468 U.S. at 922-23, 104 S.Ct. 3405. Our Court has identified four such situations:

>> (1) [when] the magistrate [judge] issued the warrant in reliance on a deliberately or recklessly false affidavit;

>> (2) [when] the magistrate [judge] abandoned his judicial role and failed to perform his neutral and detached function;

>> (3) [when] the warrant was based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'; or

>> (4) [when] the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

> *Williams,* 3 F.3d at 74 n. 4 (citations omitted).

*Hodge*, 246 F.3d at 307-308. *See also*, *United States v. Katzin*, 769 F.3d 163 (3d Cir.

2014):

> Where the particular facts of a case indicate that law enforcement officers
> act[ed] with an objectively reasonable good-faith belief that their conduct [was]
> lawful, or when their conduct involve[d] only simple, isolated negligence, there
> is no illicit conduct to deter. In such circumstances, the deterrence rationale
> loses much of its force and exclusion cannot pay its way. Alternatively, where
> law enforcement conduct is deliberate, reckless, or grossly negligent or
> involves recurring or systemic negligence, deterrence holds greater value and
> often outweighs the associated costs. Put differently, exclusion is appropriate
> only where law enforcement conduct is both sufficiently deliberate that
> deterrence is effective and sufficiently culpable that deterrence outweighs the
> costs of suppression. Thus, determining whether the good faith exception
> applies requires courts to answer the objectively ascertainable question
> whether a reasonably well trained officer would have known that the search
> was illegal in light of all of the circumstances.

*Id*. at 171 (internal quotation marks and citations omitted).

"The government shoulders the burden of establishing that suppression is

unwarranted." *Taylor v. Alabama,* 457 U.S. 687, 690 (1982); *see also United States v.*

*Dupree*, 617 F.3d 724, 738-39 (3d Cir. 2010). In challenging suppression, the Government

"must meet its burden by a preponderance of the evidence." *United States v. Pelullo*, 173

F.3d 131, 138 (3d Cir. 1999).

Here, Jones' suppression motions rely on the third and fourth situations set forth by

the Third Circuit in which an officer's reliance on a search warrant would not trigger the

good faith exception. Specifically, although without any argument or reasoning, Jones's

brief in support of his motion to suppress on the basis of an insufficient nexus asserts that

"the Affidavit of Probable Cause submitted in support of the Search Warrant for 'US

Currency' was so lacking in indicia of probable cause as to render official belief in its

existence unreasonable." (Doc. 102, at 8). Defendant's brief in support of his motion to

suppress on the basis that the warrant was overbroad contends, also without any reasoning

or support, that "because the Search Warrant for 'US Currency' was so facially deficient, the

executing officers. . . who also prepared the warrant, could not presume it to be valid."

(Doc. 104, at 6).  Defendant's arguments lack merit.

Preliminarily, the search warrant was approved by both an Assistant District Attorney

and subsequently the magisterial district judge.  *See Leon*, 468 U.S. at 922 ("a warrant

issued by a magistrate normally suffices to establish that a law enforcement officer has

acted in good faith in conducting the search.") (internal quotation marks omitted);

*Messerschmidt v. Millender*, 565 U.S. 535, 553 (2012) ("the fact that the officers sought and

obtained approval of the warrant application from a superior and a deputy district attorney

before submitting it to the Magistrate provides further support for the conclusion that an

officer could reasonably have believed that the scope of the warrant was supported by

probable cause.").

Upon review of the Search Warrant and supporting Affidavit of Probable Cause,

there is no basis to find that the warrant was based on an affidavit so lacking in indicia of

probable cause as to render the law enforcement officers' belief in its existence entirely

unreasonable.  Rather, as previously set forth, the Affidavit of Probable Cause included

specific information obtained by police officers within the last several days that (1) Jones

and another man had been pulled over on March 14, 2021, while traveling in a vehicle

owned by Jones and a search of the vehicle revealed illegal narcotics and drug

paraphernalia, (2) in the police station, a police officer heard Jones direct an individual to take $12,000 dollars from a box and put it on his books, (3) two cooperating witnesses gave statements indicating that Jones was involved in ongoing illegal drug activity, and (4) a cooperating witness informed the police officers that Jones kept his money at 325 High Street and officers had independently verified that Jones paid the utility bills at that same address and had also independently confirmed he had been to that location prior to "this incident". (*See generally*, Doc. 109-1).  *See Williams*, 3 F.3d at 74 ("This is not a case in which the affidavit contained mere conclusory assertions or a single piece of evidence which the law of the stationhouse shop would recognize as clearly insufficient. The affidavit in this case presented a number of specific facts tending to show the presence of illegal activity in the motel rooms, and those facts presented the magistrate with the judgmental task of evaluating their cumulative significance and testing it against the legal standard of probable cause. When judgment calls of this kind are required, we believe *Leon* teaches that officers are entitled to rely on the magistrate's finding of probable cause.").

Furthermore, for the reasons set forth throughout this opinion, *supra*, the search warrant at issue here "was neither general nor so plainly in violation of the particularity requirement that the executing officers could not have reasonably trusted in its legality," *United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents*, 307 F.3d 137, 149 (3d Cir. 2002).

### III. Conclusion

For the reasons set forth herein, Defendant Jones' Motions to Suppress Evidence on the basis of Insufficient Nexus (Doc. 101) and Search Warrant Overbroad (Doc. 103) will be denied.  A separate Order follows.

Robert D. Mariani
United States District Judge