**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **v.** | : | **3:21-CR-126** |
| | : | **(JUDGE MARIANI)** |
| **MICHAEL JONES, JR.,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

On April 27, 2021, a federal grand jury indicted Defendant Michael Jones, Jr., in a

10-count Indictment, charging him as follows:

- Conspiracy to Distribute and Possess with Intent to Distribute Cocaine Base and Fentanyl in violation of 18 U.S.C. § 846 (Count 1);

- Possession with Intent to Distribute Cocaine Base in violation of 18 U.S.C. § 841(a)(1) (Counts 2, 4);

- Possession with Intent to Distribute Fentanyl in violation of 18 U.S.C. § 841(a)(1) (Counts 3, 5);

- Possession with Intent to Distribute Methamphetamine in violation of 18 U.S.C. § 841(a)(1) (Count 6);

- Possession of a Firearm in Furtherance of Drug Trafficking in violation of 18 U.S.C. § 924(c) (Count 7);

- Prohibited Person in Possession of a Firearm in violation of 18 U.S.C. § 922(g) (Count 8);

- Possession of a Stolen Firearm in violation of 18 U.S.C. § 922(j) (Count 9);

- Maintaining a Drug Involved Premises in violation of 21 U.S.C. § 856(a)(2) (Count 10).

(Doc. 1).[1]

Following Jones' Indictment, Defendant, through counsel, filed a number of pre-trial motions over the course of two years.

First, on October 4, 2021, Defendant filed a Motion to Suppress Physical Evidence (Doc. 26). Defendant's motion arose out of the traffic stop of Jones' vehicle in Luzerne County by the Pennsylvania State Police on March 14, 2021. Defendant argued that all evidence seized subsequent to the traffic stop, including drugs and related paraphernalia from the vehicle, and drugs, drug paraphernalia, and guns later seized from a residence in Wilkes-Barre, should be suppressed. (*Id*.). The Court held an evidentiary hearing on Defendant's suppression motion on April 5, 2022. At the hearing, the Government presented the testimony of two law enforcement witnesses: Jeffrey Lamm and Mark Conrad. At the request of Defendant, and with the Government's concurrence, the Court held a second evidentiary hearing to supplement the record on May 20, 2022. At the second hearing, the Government presented further testimony by Jeffrey Lamm as well as testimony from Amanda Barton. Defendant did not present witness testimony at either hearing. The parties thereafter filed post-hearing briefs. (*See* Docs. 43, 53, 55). This Court denied Defendant's motion on July 22, 2022, and scheduled the case for trial. (*See* Docs.

---

[1] Counts 1, 2, and 4 of the Indictment were amended on June 15, 2022, to reflect that the cocaine seized from Jones' vehicle and residence was cocaine, not cocaine base. (*See* Doc. 21).

58-60).

However, following the appointment of new counsel for Defendant, the Court permitted Defendant to file additional pre-trial motions.  (Doc. 96; *see also*, Docs. 72, 73). Defendant thereafter filed the following four pre-trial motions:

- Motion to Suppress Evidence – Warrantless Searches & Seizures (Doc. 97);
- Motion to Suppress Evidence – Arrested Without Probable Cause (Doc. 99);
- Motion to Suppress Evidence – Insufficient Nexus (Doc. 101);
- Motion to Suppress Evidence – Search Warrant Overbroad (Doc. 103).

On February 28, 2023, this Court denied Defendant's Motions to Suppress Evidence on the basis of Insufficient Nexus (Doc. 101) and Search Warrant Overbroad (Doc. 103). (Docs. 111, 112).

On February 23, 2024, following a number of continuances at the request of the parties, the Court held an evidentiary hearing on Defendant's Motion to Suppress Evidence on the basis of Warrantless Searches & Seizures (Doc. 97). The parties thereafter submitted post-hearing briefing (Docs. 160, 163). On May 30, 2024, the Court issued a Memorandum Opinion with an accompanying Order denying the motion. (Docs. 166 & 167.)

Jones' January 11, 2023, "Motion to Suppress Evidence Arrested Without Probable Cause" (Doc. 99) is now fully briefed (Docs. 100 & 113) and ripe for the Court's review.

## II. SYNOPSIS

This Court previously set forth the factual history of this case as developed by the testimony of Jeffrey Lamm, Mark Conrad, and Amanda Barton at the evidentiary hearing and supplemental hearing, held on April 5, 2022, and May 20, 2022, in its Memorandum Opinion addressing Defendant's prior Motion to Suppress filed on October 4, 2021. (*See* Doc. 58 at 3-13). In brief, Jones was charged with crimes relating to the possession of drugs and weapons following a law enforcement investigation that relied on a confidential informant. (*Id*.) The investigation into Defendant culminated into the stopping and search of Jones' vehicle on his way back from a trip to Philadelphia and a subsequent search of Jones' residence at 325 High Street. The Court incorporates herein its prior recitation of the facts but also sets forth the facts relevant to Defendant's current pending motion (Doc. 99) in more detail below.

In February 2021, Pennsylvania State Trooper Jeffrey Lamm received information from a confidential informant that Jones was a large-scale drug supplier:

> The information I received through a confidential informant, basically, the information was that Michael Jones was a large-scale drug supplier/dealer from the Philadelphia area that was bringing large quantities of fentanyl, heroin and crack cocaine back and forth from Wilkes-Barre to – from Philadelphia to Wilkes-Barre, and then bringing currency and whatnot back and forth, at least, three or four times a month and was making a large amount of money doing this.

(Test. of Lamm, Hr'g Tr., Apr. 5, 2022, Doc. 42, at 8:6-13.)

The Confidential Informant was an individual who had "been working with [Lamm] for

several years" and had "provided reliable information in the past" which led to several

arrests and prosecutions. (*Id.* at 23:13-17; Test. of Barton, Hr'g Tr., May 20, 2022, Doc. 50,

at 25:19-25 & 37:8-13.)

  In February 2021, the Confidential Informant "moved to Wilkes-Barre Inn and Suites"

and "met a lady who referred to herself as Auntie, who was Stephanie Vickers, and her

husband Clinton Cole." (Test. of Barton, Hr'g Tr., May 20, 2022, at 28:16-25-29:2.) Vickers

was selling drugs and "stayed in Room 165" at the time. (*Id.* at 29:3-10.) The Confidential

Informant learned that Jones was supplying Vickers with drugs and the Confidential

Informant "called Trooper Lamm" to inform him. (*Id.* at 30:1-9.) Lamm then started an

investigation into Jones. (*Id.* at 30:13-15.)

  On March 10, 2021, the Confidential Informant conducted "a controlled purchase of

heroin fentanyl" from Vickers in Room 165 at Wilkes-Barre Inn and Suites. (Test. of Lamm,

Hr'g Tr., Apr. 5, 2022, at 9:7-22 & 10:11-14; Test. of Barton, Hr'g Tr., May 20, 2022, at

31:23-24.) Lamm and other members of law enforcement set up surveillance in the area of

the hotel. (Test. of Lamm, Hr'g Tr., Apr. 5, 2022, at 27:2-7.)

  The Confidential Informant was inside Vickers's hotel room for "about five minutes"

to purchase the drugs, and when the Confidential Informant left Room 165, the Confidential

Informant walked to Lamm's vehicle, which "was parked out in the parking lot by TGI

Friday's." (Test. of Barton, Hr'g Tr., May 20, 2022, at 29:23-25 & 32:1-10.) Once inside his

vehicle, the Confidential Informant notified Lamm that during the controlled purchase,

Vickers told the Confidential Informant that Jones "was planning on making a trip to Philadelphia within the next few days to re-up or obtain more narcotics." (Test. of Lamm, Hr'g Tr., Apr. 5, 2022, at 12:14-17.) The Confidential Informant also learned from Vickers that Jones "was [currently] on his way to the hotel to deliver the drugs to Vickers." (*Id*. at 42:6-13 & 43:10-12; Test. of Lamm & Barton, Hr'g Tr., May 20, 2022, at 14:5-10 & 32:4-22.)

Surveillance officers remained at the hotel and observed Jones operating "a late model black Nissan Maxima" arrive at the location and stay for a short period of time. (Test. of Lamm, Hr'g Tr., Apr. 5, 2022, at 12:20-25.) Officers then followed Jones from the hotel to 253 Stanton Street, Wilkes-Barre and then to 325 High Street, Wilkes-Barre. (*Id*. at 12:20-25 & 13:1.)

On March 12, 2021, the Confidential Informant notified Lamm that Jones and Cole would be driving Jones' vehicle to Philadelphia on that evening to get another supply of drugs. (*Id*. at 13:12-22; Test. of Lamm, Hr'g Tr., May 20, 2022, at 14:11-15.) Based upon that information, surveillance teams were able to surveil Jones and Cole at the 253 Stanton Street residence and follow them to the Pennsylvania Turnpike South entrance. (Test. of Lamm, Hr'g Tr., Apr. 5, 2022, at 14:5-16.)

On March 14, 2021, the Confidential Informant contacted Lamm and indicated that Cole and Jones would be leaving Philadelphia and returning to Wilkes-Barre soon with narcotics in the trunk of the vehicle. (*Id*. at 15:3-10; Test. of Lamm, Hr'g Tr., May 20, 2022, at 14:16-20.) Based upon that information surveillance teams set up on several roadway

6

locations that would be utilized to travel from Philadelphia to the Wilkes-Barre area. (Test. of Lamm, Hr'g Tr., Apr. 5, 2022, at 15:13-16 & 31:18-25.)

At approximately 6:18 p.m., Lamm observed Jones's black Nissan Altima exit the Pennsylvania Turnpike at the Bear Creek Exit and travel northbound on SR 115 at a noticeably fast rate of speed. (*Id*. at 7:2-8.) Lamm began to follow the Nissan and observed that the Nissan was following closely behind another vehicle at a less than one car length distance. (*Id*. at 17:5-6 & 34:6-20.) Lamm radioed Corporal Mark Conrad, who was positioned North of Lamm, closer to the City of Wilkes-Barre, that the suspect vehicle was heading towards him and following a car at a very close distance. (Test. of Lamm & Conrad, Hr'g Tr., Apr. 5, 2022, at 17:9-11; 34:22-25 & 47:12-25.) Prior to the surveillance detail, Conrad was informed that there was going to be a vehicle traveling from Philadelphia with a quantity of controlled substances. (Test. of Conrad, Hr'g Tr., Apr. 5, 2022, at 46:14-19.) Specifically, Conrad testified that:

> […] I was made aware that there was going to be a vehicle traveling back from Philadelphia, that they had information from a confidential informant that this individual is going to being supplying or bringing back from Philadelphia a quantity of controlled substances.

(*Id*.)

After Lamm notified him that the target vehicle was observed getting off the Turnpike, Conrad saw a darker red SUV and the Nissan directly behind the SUV pass his location. (*Id*. at 48:10-13.) Conrad pulled out from his location onto SR 115 to pursue the Nissan and was able to catch up to it as the Nissan was pulling off of SR309/Cross Valley

7

onto Exit 1. (*Id*. at 48:15-25.)

Conrad initiated the traffic stop of the Nissan on the exit ramp. As Conrad approached the vehicle, he noticed that the driver was facing forward but the passenger, Jones, immediately turned around and watched him approach the Nissan. (*Id.* at 49:5-13.) When Conrad made contact with Cole and Jones, he noticed a strong odor of air fresheners. (*Id.* at 49:18-19.) During the brief initial contact, Cole appeared nervous, was very talkative, and was inexplicably laughing. (*Id.* at 49:23-25.) Conrad also noticed that the passenger, Jones, appeared to be nervous. (Test. of Conrad, Hr'g Tr., Apr. 5, 2022, at 50:1-2.)

Conrad separately interviewed Cole and Jones. "Based upon their reaction, conflicting stories, the vague travel plans, the totality of the information they were providing," Conrad believed they were engaging in criminal activity. (*Id.* at 53:19-22.) Jones granted Conrad consent to search the vehicle and shortly after Trooper Christopher Isbitski began focusing on a speaker box that was removed from the trunk, Jones withdrew consent. (*Id.* 54:4-22 & 55.) Conrad then made the decision to tow the car off the road and place Cole and Jones into custody. (*Id.* at 56:20-23.) The vehicle was placed in impound and K-9 Astor gave a positive indication towards the vehicle's trunk area. (*Id.* at 57:4-9.) Officers obtained a search warrant and discovered controlled substances in the speaker box, which was inside the trunk.

Prior to being transported to the Luzerne County Correctional Facility, officers

permitted Jones to make a telephone call in the presence of Officer Kevin Novackowski. (*See* Affidavit of Probable Cause, Doc. 115-2 at 3.) In that call, Novackoski heard Jones direct the individual to take $12,000 from a box in the top shelf of a closet and put it on his books because he was going upstate. (*Id*.) Officers then obtained search warrant for 325 High Street, Wilkes-Barre, PA to search for U.S. currency. (*Id*.) During the execution of the search warrant, officers discovered a large amount of U.S. currency, multiple controlled substances, various packaging materials, and a firearm and ammunition. (*See* Doc. 115-3.)

On January 11, 2023, Jones filed a "Motion to Suppress Evidence Arrested without Probable Cause" (Doc. 99), which has now been fully briefed. (Docs. 99 and 113.) That motion is now ripe for the Court's review.

## III. ANALYSIS

In his "Motion to Suppress Evidence Arrested without Probable Cause," Jones argues that law enforcement officers arrested him without probable cause. (*See* Doc. 99 ¶ 6.) Jones further argues that "because law enforcement used a statement made by Jones while unlawfully arrested to obtain the search warrant for 325 High Street, Wilkes-Barre, all evidence seized from that residence should be suppressed as fruits on Jones' unlawful arrest." (*Id*. ¶ 9.)

"Probable cause exists where the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *United States*

9

*v. Cruz,* 910 F.2d 1072, 1076 (3d Cir. 1990). They turn on "the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford,* 543 U.S. 146, 152 (2004). In reaching this conclusion, the arresting officer's state of mind is irrelevant; all the factfinder must ask is whether the facts available to the arresting officer objectively gave rise to a finding of probable cause at the time the arrest was made. *Whren v. United States,* 517 U.S. 806, 812–13 (1996) (summarizing case law and concluding that "[s]ubjective intention plays no role in ordinary, probable-cause Fourth Amendment analysis").

Here, law enforcement officers had probable cause to arrest Jones following their stopping of Jones' vehicle on his way back from Philadelphia, Pennsylvania. "A sufficiently specific tip from an informant of proven reliability can establish probable cause for an arrest, not merely a *Terry* stop." *United States v. Vasquez*, 544 F.3d 348, 350 (1st Cir. 2008). Courts in the Third Circuit have similarly found tips from reliable informants to be a sufficient basis to establish probable cause to make an arrest:

> Information received from a confidential informant can form the basis for probable cause to arrest, if it can reasonably be deemed reliable. An informant may be deemed reliable if the informant has been reliable in the past, if police have independently corroborated a tip, or if the informant himself participated in the criminal activity.

*United States v. King*, 366 F. Supp. 2d 265, 273 (E.D. Pa. 2005), *aff'd*, 182 F. App'x 88 (3d Cir. 2006) (footnotes omitted); *see also United States v. Beasley,* 412 F.Supp. 447, 449 (E.D. Pa. 1975), *aff'd,* 538 F.2d 321 (3d Cir. 1976).

10

In this case, the Court has already determined that the information provided by the

Confidential Informant to law enforcement was reliable. In the Court's July 22, 2022,

Memorandum Opinion addressing Jones' earlier motion to suppress, the Court held that:

> Here, the testimony of Lamm and Barton, both of which the Court finds to be credible, establishes that the information provided by Barton to Lamm had sufficient indicia of reliability to support a finding of probable cause to initiate the traffic stop.

> Preliminarily, Lamm had an established relationship with Barton as of February of 2021. At the time Barton first contacted Lamm about Jones in February of 2021, she had been his CI since 2019, had done "dozens of controlled purchases ", "provided reliable information" , and Trooper Lamm had "arrested and successfully prosecuted several defendants, based upon information and (Barton's] cooperation. " (Test. of Lamm, Hr 'g Tr., Apr. 5, 2022, at 23; see also, Test. of Barton, Hr 'g Tr ., May 20, 2022, at 25, 37).

> The information Barton provided to Lamm about Jones and Vickers from February, 2021 to March, 2021, was consistently shown to be reliable and based on her personal knowledge.

> . . . .

> […] the record reflects that, regardless of Barton 's use of controlled substances, as of March 14, Lamm had regularly verified the information Barton provided to him about Jones, Cole, and Vickers and that information had repeatedly been confirmed to be accurate.

(Doc. 58 at 17.)

The Court has thus already determined that the information provided by Barton to

Lamm was consistently reliable. (*Id*.) Additionally, the Court has previously concluded that

Conrad, the officer who initiated the traffic stop of Jones, had probable cause to search

Jones' car for drugs at the time of the stop. In the Court's July 22, 2022, Memorandum

Opinion, the Court found that:

> [e]ven if probable cause did not exist at the time of the traffic stop, which the Court finds it did, Conrad had reasonable suspicion based on the CI's information to initiate the traffic stop which then developed into probable cause given the totality of the circumstances.

(Doc. 58 at 21.)

Although the Court recognizes that the analysis pertaining to probable cause for a search warrant is distinct from determining whether probable cause exists to arrest an individual, the two analyses are not unrelated. As the Third Circuit has held,

> [t]o find probable cause to search, there needs to be a "fair probability that contraband or evidence of a crime will be found in a particular place." *Gates,* 462 U.S. at 238, 103 S.Ct. 2317. Because this inquiry focuses on the relation of criminal conduct to a particular location and not on the activities of any particular person, "probable cause to arrest does not automatically provide probable cause to search the arrestee's home." *United States v. Jones,* 994 F.2d 1051, 1055 (3d Cir.1993). That is not to say that those facts establishing probable cause to arrest are irrelevant to probable cause to search the arrestee's house. "If there is probable cause to believe that someone committed a crime, then the likelihood that that person's residence contains evidence of the crime increases." *Id.* at 1055–56.

*United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002).

For the same reasons discussed in the Court's July 22, 2022, Memorandum Opinion, in addition to the information provided by the Confidential Informant, Jones' actions during the traffic stop further established probable cause to arrest him:

> Conrad, a trooper with the Pennsylvania State Police for approximately 17 years, testified that upon pulling over Jones' vehicle, Cole, the driver, exhibited a number of signs of being nervous, and Jones appeared both uncomfortable and nervous. (Test. of Conrad, Hr'g Tr., Apr. 5, 2022, at 49-50). When Conrad requested Cole's driver's license, Cole stated he had no license with him.

(Dash Camera Video, Hr'g Ex. G-8, at 1:36-1:48). Conrad further testified that his conversation with Cole raised his suspicions that there was criminal activity due to a number of vague and inconsistent answers and irrelevant questions and comments by Cole, particularly in light of the information he had previously received about Jones and Cole from Vice. (See Test. of Conrad, Hr'g Tr., Apr. 5, 2022, at 51-52). Conrad's conversation with Jones furthered his belief that Jones and Cole were engaged in criminal activity for a number of reasons, including the inconsistencies between the stories provided by Cole and Jones, "the vague travel plans", and their reactions to Conrad's questions. (Test. of Conrad, Hr'g Tr., Apr. 5, 2022, at 52-53). In addition, Conrad testified that when Trooper Isbitski shook the box/speaker which was located in the trunk of the vehicle, the Troopers "noticed an object rattling inside" which was suspicious to them. (Test. of Conrad, Hr'g Tr., Apr. 5, 2022, at 55). The police dash cam video confirms that the Troopers discussed that something was loose in the speaker box and agreed that something "shouldn't be bouncing around" in the speaker box. (Dash Camera Video, Hr'g Ex. G-9, at 24:46-28-21). Conrad explained that "the Phillips head screws that hold the speaker together . . . were tooled as if they had been off and on before. They don't come like that from the factory, like, they've been tampered with." (Test. of Conrad, Hr'g Tr., Apr. 5, 2022, at 55). As the officers began conducting the search of the speaker and attempting to open it, Jones withdrew his consent to the search of the vehicle. (Dash Camera Video, Hr'g Ex. G-9, at 28:21; Test. of Conrad, Hr'g Tr., Apr. 5, 2022, at 55-56). Conrad, noting that at that time "there was a safety concern by the way [Jones and Cole] were acting", had the vehicle impounded at the Wilkes-Barre City Police Department. (Test. of Conrad, Hr'g Tr., Apr. 5, 2022, at 56, 65-66). Looking to the totality of the circumstances, this sequence of events, coupled with Conrad's prior knowledge of the information from Lamm's CI that drugs were allegedly in the car (Test. of Conrad, Hr'g Tr., Apr. 5, 2022, at 46, 58), supports a finding that the facts available to Conrad following the initiation of the traffic stop not only were sufficient to establish reasonable suspicion that Jones and Cole were involved in drug trafficking, but that that probable cause existed to search the vehicle following the initial traffic stop.

(Doc. 58 at 22-24.)

Examining the totality of the circumstances, Conrad had probable cause to arrest

Jones immediately following the traffic stop in light of the reliable information provided to law

enforcement by the Confidential Informant and Jones' behavior during the traffic stop.

Additionally, to the extent Jones' argues that his phone call statements should be

suppressed as statements made during a custodial interrogation following a wrongful arrest,

he is wrong. The Third Circuit has addressed in detail the consideration of whether a

statement was voluntary:

> The Fifth Amendment prohibits the government from using incriminating
> statements made by the defendant unless it employs procedural safeguards
> effective to secure the privilege against self-incrimination. *Miranda v. Arizona,*
> 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). This protection only
> applies to statements made when the defendant is both in custody and subject
> to interrogation. *Id.* Interrogation refers to express questioning as well as its
> functional equivalent, *i.e.,* "any words or actions on the part of the police ... that
> the police should know are reasonably likely to elicit an incriminating response
> from the suspect." *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682,
> 64 L.Ed.2d 297 (1980). If the individual indicates his wish to remain silent, he
> is invoking his right to exercise his Fifth Amendment privilege and the
> interrogation must cease. *Miranda,* 384 U.S. at 473–74, 86 S.Ct. 1602. But
> "[a]ny statement given freely and voluntarily without any compelling influences
> is ... admissible in evidence." *Id.* at 478, 86 S.Ct. 1602.

*United States v. Martinez*, 460 F. App'x 190, 193 (3d Cir. 2012)

Here, even by his own recounting of events, Jones' statements made on the phone

in front of Officer Novackowski were made voluntarily and are thus admissible. Jones' states

that he "made a phone call from the police station that was eavesdropped on by law

enforcement." (Doc. 100 at 6.) Jones argues that because law enforcement used the

statements made on this phone call in their affidavit of probable cause to obtain a search

warrant for currency at his residence, the evidence seized at the residence should be

suppressed as fruits of the poisonous tree. (*Id.* at 6; *see also* Affidavit of Probable Cause,

Doc. 115-2, at 3 ("Prior to transport to the Luzerne County Correctional Facility, JONES

made a telephone call in the presence of Ofc. K. Novakowski. In that Call believe to be a female paramour, Ofc. Novackowski heard JONES direct the female to take $12,000 from a box in the top shelf of a closet and put it on his books because he was going upstate."))

Even if the Court were to assume the truth of the factual circumstances as Jones describes them, his statements made freely on the phone were not coerced or involuntarily made. Although Jones was not free to leave at the time of his phone call, his statements were not made as a product of an interrogation or any form of questioning by law enforcement. *See Miranda*, 384 U.S. at 478 ("Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence."); *Arizona v. Mauro*, 481 U.S. 520, 528 (1987) (finding that the police did not interrogate the defendant when the police allowed the defendant to meet with his wife, and the officer in the same room recorded their conversation.); *United States v. DeSumma*, 272 F.3d 176, 180 (3d Cir. 2001) ("Applying the *Wong Sun* fruits doctrine where the evidence is obtained as the result of a voluntary statement, would be inconsistent with deterring improper police conduct and the goal of assuring trustworthy evidence. *Id.* at 308, 105 S.Ct. 1285. No constitutional violation occurs in such a situation unlike the circumstances where an unreasonable search occurs or a coerced confession is obtained.")

Therefore, because Jones' statements on the phone were voluntarily made, his statements were not improperly used by law enforcement in their affidavit of probable cause to obtain a search warrant for Jones' home. (*See* Doc. 115-2 at 3.) The Court thus declines

15

to suppress the evidence obtained by officers stemming from the affidavit of probable cause that relied on Jones' phone call while he was arrested.

## IV. CONCLUSION

For the reasons set forth herein, Jones' Motion to Suppress (Doc. 99) will be denied. A separate Order follows.

Robert D. Mariani
United States District Judge