THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,          :
                                   :
          v.                       :    3:21-CR-126
                                   :    (JUDGE MARIANI)
MICHAEL JONES, JR.,                :
                                   :
               Defendant.          :

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

Presently before the Court is Defendant Michael Jones, Jr.'s Motion to Dismiss for

Violation of the Speedy Trial Act and the United States Constitution (Doc. 221).

On April 27, 2021, a federal grand jury indicted Defendant Michael Jones, Jr., in a

10-count Indictment, charging him as follows:

- Conspiracy to Distribute and Possess with Intent to Distribute Cocaine Base and Fentanyl in violation of 18 U.S.C. § 846 (Count 1);

- Possession with Intent to Distribute Cocaine Base in violation of 18 U.S.C. § 841(a)(1) (Counts 2, 4);

- Possession with Intent to Distribute Fentanyl in violation of 18 U.S.C. § 841(a)(1) (Counts 3, 5);

- Possession with Intent to Distribute Methamphetamine in violation of 18 U.S.C. § 841(a)(1) (Count 6);

- Possession of a Firearm in Furtherance of Drug Trafficking in violation of 18 U.S.C. § 924(c) (Count 7);

- Prohibited Person in Possession of a Firearm in violation of 18 U.S.C. § 922(g) (Count 8);

- Possession of a Stolen Firearm in violation of 18 U.S.C. § 922(j) (Count 9);

- Maintaining a Drug Involved Premises in violation of 21 U.S.C. § 856(a)(2) (Count 10).

(Doc. 1).[1]

Defendant was arraigned on April 28, 2021 and ordered detained. On April 29, 2021, this Court issued a pretrial scheduling Order, scheduling trial to commence on June 14, 2021, and ordering all pretrial motions to be filed no later than May 12, 2021. (Doc. 16). Over the course of the following three years, the deadline for the filing of pretrial motions and for the commencement of trial was repeatedly extended at the request of Defendant Jones and due Defendant's filing of five substantive pretrial motions as well as multiple requests for new counsel.

Following a number of continuances of the trial date, trial in this matter is now scheduled to commence on December 2, 2024.

However, on November 19, 2024, Defendant Jones filed a Motion to Dismiss for Violation of the Speedy Trial Act and the United States Constitution (Doc. 221) and supporting brief (Doc. 222). The Government thereafter timely filed a brief in opposition (Doc. 232). Defendant's Motion to Dismiss (Doc. 221) is now ripe for resolution. For the following reasons, the Court will deny this motion.

---

[1] Counts 1, 2, and 4 of the Indictment were amended on June 15, 2021, to reflect that the cocaine seized from Jones' vehicle and residence was cocaine, not cocaine base. (*See* Doc. 21).

## II. ANALYSIS

Jones' Motion to Dismiss (Doc. 221) requests that the Court dismiss this action with prejudice where his rights under Speedy Trial Act and the Sixth Amendment have allegedly been violated.

### A.  Speedy Trial Act – 18 U.S.C. § 3161

The Speedy Trial Act ("STA") establishes time limits for completing the various stages of a federal criminal prosecution.  The information or indictment must be filed within 30 days from the date of arrest or service of the summons.  18 U.S.C. § 3161(b).  The STA further provides:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1).

This seventy-day period is subject to expansion by periods of excludable delay.  *See Henderson v. United States*, 476 U.S. 321, 326 (1986). *See also*, *Zedner v. United States*, 547 U.S. 489, 497 (2006) (the STA "recognizes that criminal cases vary widely and that there are valid reasons for greater delay in particular cases. To provide the necessary flexibility, the Act includes a long and detailed list of periods of delay that are excluded in computing the time within which trial must start. *See* § 3161(h).").  Under the Speedy Trial Act, any "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the

3

hearing on, or other prompt disposition of, such motion" is excluded from the 70-day period

permitted between indictment and trial.  18 U.S.C. § 3161(h)(1)(D).  The provision broadly

applies to all pretrial motions, whether or not they actually cause a postponement of trial.

*Henderson*, 476 U.S. at 327 (exclusion is automatic).

As explained by the Third Circuit soon after the Supreme Court's decision in

*Henderson*:

> Section 3161(h)(1)[(D)] excludes "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)[(D)].
>
> Thus, subsection [(D)] excludes time in two situations. First, if the court holds a hearing on the motion, all of the days between the filing of the motion and the conclusion of a hearing are excluded. *See Henderson v. United States,* 476 U.S. 321, ——, 106 S.Ct. 1871, 1876, 90 L.Ed.2d 299, 308 (1986). Interpreting that provision, the Supreme Court has held that subsection [(D)] also excludes any time following the hearing that is required for filing briefs and additional materials necessary for proper disposition of the motion. 476 U.S. at ——, 106 S.Ct. at 1877.
>
> Second, if the court does not hold a hearing, subsection [(D)] excludes the period from the filing of the motion until the parties complete the submissions necessary for the court to reach a decision. 476 U.S. at ——, 106 S.Ct. at 1876. . . .

*United States v. Felton*, 811 F.2d 190, 195 (3d Cir. 1987).

Section 3161(h)(1)(D) should be read in conjunction with § 3161(h)(1)(H), which

states that "[a]ny period of delay resulting from other proceedings concerning the defendant,

including . . . delay reasonably attributable to any period, not to exceed thirty days, during

which any proceeding concerning the defendant is actually under advisement by the court"

4

is excluded from the speedy trial time when computing the time within which trial must

commence, 18 U.S.C. § 3161(h)(1)(H).  *See United States v. Williams*, 917 F.3d 195, 203

(3d Cir. 2019) (explaining that in *Henderson*, "the Supreme Court counseled parties to read

the exclusions contained in section 3161(h)(1) 'in connection with' each other.") (citing

*Henderson*, 476 U.S. at 328).  Thus, "'prompt disposition' of a motion—as referred to in . . .

section 3161(h)(1)(D)—must be interpreted with reference to the thirty-day limitation

contained in . . .  section 3161(h)(1)(H), such that 'prompt disposition' must be interpreted to

mean disposition of a motion within thirty days of that motion's being 'under advisement' by

a court." *Williams*, 917 F.3d at 203 (citing *Henderson*, 476 U.S. at 329).

Furthermore, the STA provides for periods of exclusion for:

> [a]ny period of delay resulting from a continuance granted by any judge on his
> own motion or at the request of the defendant or his counsel or at the request
> of the attorney for the Government, if the judge granted such continuance on
> the basis of his findings that the ends of justice served by taking such action
> outweigh the best interests of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(7)(A).  When calculating includable time, "both the date on which an

event occurs or a motion is filed and the date on which the court disposes of a motion are

excluded." *United States v. Lattany,* 982 F.2d 866, 872 n.6 (3d Cir. 1992).

Nonetheless, "[i]f a defendant is not brought to trial within the time limit required by

section 3161(c) as extended by section 3161(h), the information or indictment shall be

dismissed on motion of the defendant."  18 U.S.C. § 3162(a)(2).  The Speedy Trial Act

"admits no ambiguity in its requirement that when such a violation has been demonstrated,

'the information or indictment shall be dismissed on motion of the defendant.'" *United States v. Taylor*, 487 U.S. 326, 332 (1988) (quoting 18 U.S.C. § 3162(a)(2)).

Here, Defendant Jones argues that the indictment should be dismissed under the STA because 108 days of non-excludable time have passed. (*See generally*, Doc. 221). In turn, the Government asserts that there are only 12 days of non-excludable time. (Doc. 232, at 2 n.2, 9).

Jones states that the following periods of time, totaling 108 days, are non-excludable for purposes of speedy trial calculations:

- April 28, 2021 - April 29, 2021 (1 Day)
- April 30, 2021 - May 10, 2021 (11 Days)
- July 12, 2021 - July 19, 2021 (7 Days)
- July 22, 2022 - July 25, 2022 (3 Days)
- July 25, 2022 - August 1, 2022 (7 Days)
- August 3, 2022 - August 4, 2022 (1 Day)
- August 26, 2022 - September 1, 2022 (6 Days)
- September 21, 2022 - October 3, 2022 (12 Days)
- June 3, 2024 - June 24, 2024 (21 Days)
- June 26, 2024 - July 19, 2024 (23 Days)
- October 16, 2024 - November 1, 2024 (16 Days)

(Doc. 221, ¶ 3; Doc. 222, at 5). The Court addresses the specific time periods set forth by Defendant in turn.

## April 28, 2021 to April 29, 2021 and
## April 30, 2021 to May 10, 2021

Defendant Jones asserts that the time between April 28, 2021, when Jones entered his not guilty plea and April 29, 2021, when Jones filed a Motion to Continue Detention Hearing is non-excludable, as well as the time period of April 29, 2021, when this Court issued an Order scheduling this matter for trial and setting a pre-trial motion deadline until May 10, 2021, when Defendant filed a Motion for Extension of Time to File Pretrial Motions. (Doc. 222, at 5). The Government concedes that this time period, amounting to 12 days, is non-excludable. (Doc. 232, at 2 n. 2, 9). The Court agrees with the parties that no documents were filed of record which excluded the time period of April 28, 2021, to May 10, 2021, from the speedy trial clock. Therefore, 12 days of non-excludable time accumulated during this time period.

## July 12, 2021 to July 19, 2021

On May 11, 2021, this Court granted Defendant's motion for an extension of time to file pre-trial motions and extended the deadline for the filing of pre-trial motions to July 12, 2021 (Doc. 19). However, Jones failed to timely file any pre-trial motions and the Government did not request that trial be scheduled following the expiration of the pre-trial motion deadline. However, on July 19, 2021, Defendant filed an unopposed *nunc pro tunc* motion for an extension of time to file pretrial motions (Doc. 22). On July 20, 2021, the

Court granted Defendant's motion *nunc pro tunc* and calculated the extension of time as of July 12, 2021 (Doc. 23).

Defendant argues that "the time period between July 12, 2021, the due date for pretrial motions, and July 19, 2021, when Jones filed a Motion for Extension of Time to File Pretrial Motions . . . consists of seven (7) days of non-excludable time." (Doc. 222, at 6). Defendant does not set forth any rationale or legal support for his assertion.

As explained by the Third Circuit:

> . . . an ends of justice continuance pursuant to section 3161(h)[(7)](A) cannot be entered *nunc pro tunc*, and [we] hold that in its order, the district court must, at a minimum, state that it is entering an "ends of justice" continuance or a continuance pursuant to section 3161(h)[(7)](A). The order continuing the case must be entered *before* the days to be excluded.

*United States v. Brenna*, 878 F.2d 117, 122 (3d Cir. 1989) (italics in original). *See also*, *Lattany,* 982 F.2d at 877 (". . . a district court cannot provide an after-the-fact justification for unauthorized delays by granting an ends-of-justice continuance *nunc pro tunc*. . . . We have also held, however, that it can delay articulating on the record its reasons for granting the continuance if the order granting the continuance is entered before the Act's seventy-day limit would have otherwise expired.") (internal citations omitted).

Assuming that the time period from July 12, 2021 to July 19, 2021, was not properly excludable by this Court's July 20, 2021 Order extending the time to file pre-trial motions, Defendant is incorrect that this amounts to 7 days of non-excludable time. Rather, where the date for the filing of pre-trial motions expired on July 12, 2021, and Defendant filed a

motion for an extension of time on July 19, 2021, both of those days are excluded under the

STA. *Cf. Lattany,* 982 F.2d at 872 n.6. Thus, there are only six days (July 13, 14, 15, 16,

17, & 18) which may be deemed to be non-excludable under the STA.

**July 22, 2022 to July 25, 2022** and
**July 25, 2022 to August 1, 2022** and
**August 3, 2022 to August 4, 2022** and
**August 26, 2022 to September 1, 2022** and
**September 21, 2022 to October 3, 2022**

On July 22, 2022, this Court denied Defendant's Motion to Suppress Physical

Evidence (*see* Docs. 58, 59). That same day, the Court scheduled a jury trial to commence

on August 23, 2023. (Doc. 60). The Court's Order specifically stated:

> Although the Court is cognizant of the Defendant's right to a speedy trial pursuant to the Sixth Amendment of the U.S. Constitution and 18 U.S.C. § 3161, because the Court finds that the ends of justice will be served by delaying trial in order to ensure counsel for the parties the reasonable time necessary for effective preparation, taking into account the exercise of due diligence, and that such a delay outweighs the best interests of the public and the Defendant in a speedy trial, any delay occasioned by the scheduling of this trial shall be excluded from the speedy trial calculation pursuant to 18 U.S.C. § 3161(h)(7).

(*Id.* at ¶ 10). On July 25, 2022, Defendant filed a Motion to Continue Trial (Doc. 61) on the

basis that counsel for Defendant would be out of the country and "unable to meet with the

defendant, prepare motions in limine, subpoena witnesses and otherwise prepare an

effective defense." The Court granted Defendant's motion that same day and re-scheduled

trial to commence on November 7, 2022. (Doc. 62). The Court's Order further stated:

> The Court finds that, for the reasons set forth in the Motion to Continue, the ends of justice will be served by continuing trial and that such a delay outweighs the best interests of the public and the Defendant in a speedy trial. Accordingly,

the time between the date of this Order and the date of the commencement of trial is excluded from the speedy trial calculation pursuant to 18 U.S.C. § 3161(h)(7).

(*Id.* at ¶ 11).  Thus, the Court's Orders of July 22, 2022, and July 25, 2022 (Docs. 60, 62)

operated to exclude the time from July 22, 2022, to November 7, 2022, from STA

calculations.  *See United States v. Reese*, 917 F.3d 177, 182 (3d Cir. 2019).[2]

Defendant nonetheless asserts that five time periods, amounting to 29 days, within

the afore-stated time frame constitute non-excludable time.  Defendant does not set forth

_____

[2] In *Reese*, the Third Circuit Court of Appeals explained:

Together, the procedural requirements in [*United States v. Brooks*, 697 F.2d 517 (3d Cir. 1982)] and [*United States v. Rivera Construction Co.*, 863 F.2d 293 (3d Cir. 1988)] give considerable leeway to district courts in granting continuances for the ends of justice. For example, under *Brooks* a district court may give the factual basis for an ends-of-justice continuance after it is entered (but before ruling on a motion to dismiss the indictment) if the continuance order cites the relevant provision of the Act, 18 U.S.C. § 3161(h)(7)(A), or states that it is for the "ends of justice." *See* 697 F.2d at 521-22. Under *Rivera*, a district court may exclude time for the "ends of justice" without citing the Act or using any of its magic words so long as the court explains a valid factual basis for the continuance on the record when the continuance is ordered. See 863 F.2d at 297.

But this procedural leeway is not without limits, as we made clear one year after *Rivera* in our third guiding case—*United States v. Brenna*, 878 F.2d 117, 122 (3d Cir. 1989) (per curiam). If a district court enters a continuance order without either stating the factual basis for excluding time under the Act or using language that invokes it, the delay caused by the continuance is not excluded and the court cannot exclude the time in hindsight. *Id.* ("We reaffirm ... that an ends of justice continuance ... cannot be entered nunc pro tunc....").

*Reese*, 917 F.3d at 182.  Here, this Court's Orders (Docs. 60, 62) both excluded the time at issue under the relevant portion of the STA and further stated the reasons for the continuances; to wit, to ensure counsel for the parties the reasonable time necessary for effective preparation (Doc. 60, ¶ 10) and thereafter to provide counsel for Defendant the necessary time to "prepare an effective defense" as set forth in his motion to continue (Doc. 62, ¶ 11).  *See also, Lattany*, 982 F.2d 879 n.16 (citing *Rivera* when explaining that a district court's "mere[] state[ment] that it was granting a continuance to allow counsel adequate time to prepare for trial . . . met the requirements of the Act's special provision allowing continuances to give adequate preparation time to counsel.").

any legal basis for this assertion and Defendant's citations to various filings on the docket during the time period between July 22, 2022, to November 7, 2022, do not change this Court's finding that this entire period is excluded under the STA.

**June 3, 2024 to June 24, 2024 and
June 26, 2024 to July 19, 2024**

On June 3, 2024, this Court denied Jones' final two substantive pre-trial motions requesting suppression of evidence (*see* Docs. 167-170).  That same day, the Court scheduled trial in this action to commence on September 16, 2024.  (Doc. 171).  The Court's Order again excluded the time from the date of the Order to the commencement of trial from speedy trial calculation, as follows:

> Although the Court is cognizant of the Defendant's right to a speedy trial pursuant to the Sixth Amendment of the U.S. Constitution and 18 U.S.C. § 3161, because the Court finds that the ends of justice will be served by delaying trial in order to ensure counsel for the parties the reasonable time necessary for effective preparation, taking into account the exercise of due diligence, and that such a delay outweighs the best interests of the public and the Defendant in a speedy trial, any delay occasioned by the scheduling of this trial shall be excluded from the speedy trial calculation pursuant to 18 U.S.C. § 3161(h)(7).

(*Id*. at ¶ 9).

Defendant Jones asserts that the time period between this Court's June 3, 2024 trial scheduling order and Jones' June 24, 2024 *pro se* Motion to Reconsider Denial of Defendant's Motion to Suppress Physical Evidence is not excluded from STA calculation nor is the time period between June 26, 2024, when this Court appointed new counsel for Jones to July 19, 2024, when the Government filed a Motion to Continue Jury Selection/

Trial and for Excludable Time Pursuant to the Speedy Trial Act. (Doc. 222, at 7).

Defendant's argument lacks any legal support and has no merit where it ignores this Court's

Order of June 3, 2024 (Doc. 171) which excluded all time from June 3, 2024, to September

16, 2024, from STA calculations.

### October 16, 2024 to November 1, 2024

On September 4, 2024, Defendant filed a counseled Motion to Continue Trial on the

basis that Defendant Jones had raised an issue with respect to whether his counsel had a

conflict of interest and that Defendant was considering proceeding *pro se*. (Doc. 187). On

September 6, 2024, this Court granted Defendant's Motion to Continue Trial and re-

scheduled trial to commence on December 3, 2024. (Doc. 193). The Court's Order further

stated:

> The Court finds that, for the reasons set forth in the Motion to Continue Trial,
> the ends of justice will be served by continuing trial and that such a delay
> outweighs the best interests of the public and the Defendant in a speedy trial.
> Accordingly, the time between the date of this Order and the date of the
> commencement of trial is excluded from the speedy trial calculation pursuant
> to 18 U.S.C. § 3161(h)(7).

(*Id*. at ¶ 10).

On October 16, 2024, following a hearing on Defendant's assertions that his counsel

had a conflict of interest and to inquire whether Defendant had decided whether he wished

to proceed to *pro se*, the Court issued an Order rescheduling trial from December 3, 2024,

to December 2, 2024 (Doc. 204). With the exception of the date for the commencement of

trial, the Court's Order incorporated therein all other directives set forth in the Court's trial scheduling Order of September 6, 2024 (*see id*. at ¶ 2).

Without further explanation, Defendant argues that the time period from October 16, 2024, when the Court re-scheduled trial to commence one day earlier, until November 1, 2024, when Defendant filed three motions *in limine*, consists of 16 days of non-excludable time. (Doc. 222, at 7). Once again, Defendant's assertion ignores this Court's scheduling Order which excluded the time period of September 6, 2024, to December 3, 2024, pursuant to the 18 U.S.C. § 3161(h)(7) (Doc. 193) and the Court's subsequent Order (Doc. 204) re-scheduling trial one day earlier and incorporating therein all other portions of the Court's prior scheduling Order, including the provision excluding the relevant time period under the STA.

For the afore-stated reasons, only 18 non-excludable days have elapsed for Speedy Trial calculation purposes. Specifically, the Court finds that 12 days elapsed from April 28, 2021 to May 10, 2021 and that 6 non-excludable days elapsed between July 12, 2021 and July 19, 2021. Accordingly, Defendant Jones' motion to dismiss for violations of the Speedy Trial Act will be denied.

## B. Sixth Amendment of the U.S. Constitution

Defendant Jones further argues that the Indictment must be dismissed because his Sixth Amendment constitutional rights have been violated (*see* Doc. 222, at 8-10).

In relevant part, the Sixth Amendment guarantees the accused "the right to a speedy and public trial."  U.S. CONST. amend. VI. "Congress enacted the Speedy Trial Act to 'give effect to the Sixth Amendment right to a speedy trial' by setting specified time limits after arraignment or indictment within which criminal trials must be commenced."  *United States v. Rivera Const. Co.*, 863 F.2d 293, 295 (3d Cir. 1988) (citing H.R.Rep. No. 1508, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S. Code Cong. & Admin. News 7401, 7402). Thus, the protections of the Speedy Trial Act "exceed those of the Sixth Amendment, which does not require that a trial commence within a specified time."  *Lattany*, 982 F.2d at 870 n.5.  However, because the Speedy Trial Act "was enacted largely to make defendants' constitutional speedy trial rights meaningful, many courts have noted that 'it will be an unusual case in which the time limits of the Speedy Trial Act have been met but the sixth amendment right to speedy trial has been violated.'" *United States v. Alvin*, 30 F.Supp.3d 323, 340 (E.D.Pa. 2014) (quoting *United States v. Nance,* 666 F.2d 353, 360 (9th Cir. 1982)); *see also*, *United States v. Green*, 508 F.3d 195, 202 (5th Cir. 2007) ("We have stated that it will be the unusual case where the time limits under the Speedy Trial Act have been satisfied but the right to a speedy trial under the Sixth Amendment has been violated.") (internal quotation marks and citation omitted); *United States v. Salimonu*, 182

F.3d 63, 69 (1st Cir. 1999) ("The fact that the STA was not violated does not automatically

preclude us from finding a violation of [Defendant's] Sixth Amendment right to a speedy trial,

although it would be unusual to have a case where the STA is satisfied but the Sixth

Amendment guarantee is violated.").

> As explained by the U.S. Supreme Court:
>
> Our speedy trial standards recognize that pretrial delay is often both inevitable and wholly justifiable. The government may need time to collect witnesses against the accused, oppose his pretrial motions, or, if he goes into hiding, track him down. We attach great weight to such considerations when balancing them against the costs of going forward with a trial whose probative accuracy the passage of time has begun by degrees to throw into question.

*Doggett v. United States*, 505 U.S. 647, 656 (1992).

When a defendant argues that his speedy trial rights have been violated, the Court

should employ a four-part balancing test set forth in *Barker v. Wingo,* 407 U.S. 514 (1972)

to assess the merits of the claim.  *United States v. Dent,* 149 F.3d 180, 184 (3d Cir. 1998).

An analysis of these factors avoids an "inflexible approach[]" which would result from

applying a fixed-time period in determining whether there has been a constitutional violation

and, rather, applies a balancing test "in which the conduct of both the prosecution and the

defendant are weighed."  *Barker*, 407 U.S. at 529-530.  In *Barker*, the Supreme Court

identified four factors in determining whether a defendant has been deprived of his right to a

speedy trial: "[l]ength of delay, the reasons for the delay, the defendant's assertion of his

right, and prejudice to the defendant."  *Id.* at 530.  "None of these factors is 'either a

necessary or sufficient condition,' and the factors 'must be considered together with such

other circumstances as may be relevant.'" *United States v. Battis*, 589 F.3d 673, 678 (3d

Cir. 2009) (quoting *Barker*, 407 U.S. at 533); *see also*, *Hakeem v. Beyer*, 990 F.2d 750, 759

(3d Cir. 1993) ("All factors must be considered and weighed as no one factor is dispositive

nor 'talismanic.'") (citing *Barker*, 407 U.S. at 533).

      With respect to the first factor, "[t]he length of the delay is to some extent a triggering

mechanism. Until there is some delay which is presumptively prejudicial, there is no

necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at

530.  Otherwise stated,

> The first of these [factors] is actually a double enquiry. Simply to trigger a
> speedy trial analysis, an accused must allege that the interval between
> accusation and trial has crossed the threshold dividing ordinary from
> "presumptively prejudicial" delay, since, by definition, he cannot complain that
> the government has denied him a "speedy" trial if it has, in fact, prosecuted his
> case with customary promptness. If the accused makes this showing, the court
> must then consider, as one factor among several, the extent to which the delay
> stretches beyond the bare minimum needed to trigger judicial examination of
> the claim.

*Doggett,* 505 U.S. at 651-652 (internal citation omitted).  In determining whether a

defendant has met this threshold burden of demonstrating delay which is "presumptively

prejudicial", the Supreme Court has noted that "[d]epending on the nature of the charges,

the lower courts have generally found postaccusation delay 'presumptively prejudicial' at

least as it approaches one year" but has emphasized that "as the term is used in this

threshold context, 'presumptive prejudice' does not necessarily indicate a statistical

probability of prejudice; it simply marks the point at which courts deem the delay

unreasonable enough to trigger the *Barker* enquiry." *Id*. at 652 n.1.  Further, "because of

the imprecision of the right to speedy trial, the length of delay that will provoke such an

inquiry is necessarily dependent upon the peculiar circumstances of the case.  To take but

one example, the delay that can be tolerated for an ordinary street crime is considerably

less than for a serious, complex conspiracy charge." *Barker*, 407 U.S. at 530-531.  *See*

*also*, *Battis*, 589 F.3d at 678 ("We have previously held that a delay of even fourteen

months is sufficient to trigger review of the remaining *Barker* factors.  However, we have

also noted that longer delays can be tolerated, for example, when the crime is very serious

or complex.") (internal citations and quotation marks omitted).

Here, Jones was indicted on April 27, 2021, and arraigned the following day.

Therefore, approximately 43 months have passed since the date of Defendant's indictment.

This period of time is sufficient to trigger the *Barker* enquiry.  *See e.g., Hakeem*, 990 F.2d at

760 (over fourteen-month delay warranted full inquiry into *Barker* factors); *United States v.*

*Mensah-Yawson*, 489 F.App'x 606, 611 (3d Cir. 2012) (fifteen-month delay sufficient to

warrant inquiry into other *Barker* factors).  Nonetheless, although this length of delay is

"presumptively prejudicial", thus warranting an analysis of the *Barker* factors, this factor only

moderately weighs in favor of Defendant.  This case is one where Defendant Jones was

charged in a 10-count Indictment alleging a conspiracy to distribute and possess with intent

to distribute cocaine and fentanyl in violation of 18 U.S.C. § 846, possession with intent to

distribute cocaine, fentanyl, and methamphetamine, all in violation of 18 U.S.C. § 841(a)(1),

possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c),

being a prohibited person in possession of a firearm in violation of 18 U.S.C. § 922(g), and

possession of a stolen firearm in violation of 18 U.S.C. § 922(j), as well as maintaining a

drug involved premises in violation of 21 U.S.C. § 856(a)(2) (*see* Doc. 1).  The Indictment

thus does not charge "an ordinary street crime", but rather includes a number of serious

charges involving both controlled substances and firearms.

With respect to the second *Barker* factor, reason for the delay, the Government

"bears the burden to justify the delay," *Hakeem,* 990 F.2d at 770.

> *Barker* grouped possible reasons for delay into three categories. A deliberate
> effort by the Government to delay the trial "in order to hamper the defense"
> weighs heavily against the Government. *Barker,* 407 U.S. at 531, 92 S.Ct.
> 2182. A "more neutral reason such as negligence or overcrowded courts" also
> weighs against the Government, though "less heavily." *Id.* This is because
> "ultimate responsibility for such circumstances must rest with the
> [G]overnment," since it is the Government's duty to bring a defendant to trial.
> *Id.* at 527, 531, 92 S.Ct. 2182. Finally, "a valid reason, such as a missing
> witness, should serve to justify appropriate delay." *Id.* at 531, 92 S.Ct. 2182.

*Battis*, 589 F.3d at 679-680.  In turn, "delays attributable to the dilatory actions of the

defendant cut against a finding of a Sixth Amendment violation."  *Hakeem*, 990 F.2d at 766.

*See also*, *Battis,* 589 F.3d at 680 ("By contrast, 'delay caused by the defense weighs

against the defendant' . . .") (quoting *Vermont v. Brillon,* 556 U.S. 81, 90 (2009)).  This "rule

accords with the reality that defendants may have incentives to employ delay as a 'defense

tactic': delay may 'work to the accused's advantage' because 'witnesses may become

unavailable or their memories may fade" over time.'"  *Brillon*, 556 U.S. at 90 (quoting *Barker*,

18

407 U.S. at 521).  *See also*, *United States v. Loud Hawk*, 474 U.S. 302, 316-317 (1986)

("'Having sought the aid of the judicial process and realizing the deliberateness that a court

employs in reaching a decision, the defendants are not now able to criticize the very

process which they so frequently called upon.'") (quoting *United States v. Auerbach,* 420

F.2d 921, 924 (5th Cir. 1969)).  In evaluating the second *Barker* factor, a court should

subtract the amount of delay caused by the defendant from the delay caused by the

Government.  *Battis*, 589 F.3d at 680.

In the present case, the record clearly demonstrates that Jones is responsible for the

large majority of the delay in this case.

Following Jones' arraignment on April 28, 2021, the Court ordered all pre-trial

motions to be filed on or before May 12, 2021. (Doc. 16).  Defendant thereafter filed three

motions to extend the time to file pre-trial motions and subsequently filed a Motion to

Suppress Physical Evidence (Doc. 26) on October 4, 2021.  Following two evidentiary

hearings and additional briefing, the Court denied the motion on July 22, 2022, and

scheduled trial to commence on August 23, 2022 (Docs. 58-60).  Defendant thereafter

moved to continue the trial, which was granted by this Court (Docs. 61, 62).

Prior to the commencement of trial on November 7, 2022, Defendant's counsel

moved to withdraw on the basis of a "conflict of interest in this case" which "prevent[ed]

further representation by the office of the Federal Public Defender in this matter" (Doc. 68),

which was granted on September 21, 2022 (Doc. 72).  Defendant's new counsel

subsequently moved to continue the trial on the basis that he needed additional time to

"review the case docket and obtain[ ] the discovery from the Government and Defendant's

former counsel." (Doc. 75). Although trial was re-scheduled to commence on January 30,

2023 (Doc. 76), in December of 2022, Defendant requested leave to file four additional pre-

trial motions and set forth the basis therefor (Doc. 88; *see also*, Docs. 86, 87). Despite the

Government's non-concurrence, this Court granted Defendant's motion and continued trial

pending resolution of Defendant's new pre-trial motions (Doc. 96). Defendant filed the

following four motions on January 11, 2023: (1) Motion to Suppress Evidence – Warrantless

Searches & Seizures (Doc. 97); (2) Motion to Suppress Evidence – Arrested Without

Probable Cause (Doc. 99); (3) Motion to Suppress Evidence – Insufficient Nexus (Doc.

101); and (4) Motion to Suppress Evidence – Search Warrant Overbroad (Doc. 103). On

February 28, 2023, the Court denied two of Defendant's pre-trial motions. (Docs. 111, 112).

Following the conclusion of briefing on the other two motions, the Court scheduled an

evidentiary hearing to be held on July 12, 2023 (Doc. 127). However, Defendant having

filed letters in April and May of 2023 raising issues with his counsel (Doc. 119, 126), which

counsel attempted to resolve, Defendant's second lawyer eventually moved to withdraw on

August 31, 2023 on basis that Defendant believed that counsel "did not have his best

interests in mind" and due to a discussion between Jones and his counsel which "became

heated and personal and led both Jones and counsel to come to the conclusion that there

[were] irreconcilable differences between the two" (Doc. 143). In light of Defendant's

counsel's motion to withdraw, and his reasons therefor, and at the request of Defendant's counsel, the Court re-scheduled the evidentiary hearing to December 15, 2023, and Defendant was thereafter appointed his third lawyer on September 13, 2023 (*see* Docs. 142, 145-147).  Defendant's new counsel moved to re-schedule the evidentiary hearing to allow Defendant and his counsel time to "adequately prepare."  (Doc. 151).  The evidentiary hearing was again re-scheduled to be held on February 23, 2024. (Doc. 152).  Following the conclusion of the evidentiary hearing and the submission of post-hearing briefs from the parties, the Court denied Defendant's final two pre-trial motions on June 3, 2024, and scheduled trial to commence on September 16, 2024 (Doc. 171).

However, following the conclusion of the February 23, 2024 evidentiary hearing, Defendant Jones began filing letters to the Court complaining about his counsel. Specifically, on May 21 and May 28, 2023, Defendant filed two letters requesting new counsel, citing to a "serious communication issue", "irreconcilable differences", a "grave conflict of interest", and asserting that his attorney "failed to argue in the brief all my contitutional [*sic*] issues I told him [about] weeks before" (Docs.  164, 165).  Defendant's counsel filed a responsive letter dated June 17, 2024, informing the Court that he believed that the attorney-client relationship was "irretrievably broken" and setting forth both the measures counsel had taken to attempt to work with Defendant as well as Defendant's confrontational and aggressive conduct towards counsel and Defendant's "insist[ence] on [counsel's] filing of frivolous motions and asserting legal positions that are not supported by

law or the factual record in the case." (Doc. 172). Jones filed another letter on June 24, 2024, again arguing that his counsel had failed to raise constitutional issues with this Court, that counsel had done "his very best to abandon [him]", was trying to "sweep [my constitutional issues] under the rug" and re-iterating his request for new counsel (Doc. 174). It being apparent that the attorney-client relationship was irretrievably broken, this Court granted Defendant Jones' request for new counsel and appointed Jones his fourth, and current, attorney on June 26, 2024. (Docs. 176, 177).

On July 19, 2024, the Government moved to continue the trial, which the Court granted, and trial was continued by three weeks and re-scheduled to commence on October 7, 2024. (Docs. 178, 179). However, on August 19, 2024, Jones filed a letter requesting new counsel and asserting that his new attorney "nods off . . . during our meetings", has "refused to argue a Frank[s] Motion for me", "has memory problems" and "does not agree with filing motions that wasn't heard to dismiss frivolous charges of my indictment." (Doc. 182). Jones also asserted that his counsel had a conflict of interest in this case because Jones' "claim deals with someone [Attorney O'Brien] has represented and [they] have the same C.I. that was unknown in his case until now." (*Id*.). On August 26, 2024, the Court denied Defendant's motion for a new attorney, but ordered Attorney O'Brien to file a letter addressing the purported conflict of interest (Doc. 183). Defendant's attorney filed a letter stating that he did not believe a conflict of interest existed but requesting a hearing due to Jones' lack of certainty as to whether he wanted to continue with his current counsel or

proceed *pro se* (Doc. 188).  The Court scheduled a hearing to be held on September 27, 2024 (Doc. 194) which was thereafter rescheduled to October 16, 2024 at the request of Defendant (Docs. 198, 199).  Due to Jones' letters to the Court and the need for a hearing, at the request of Defendant (Doc. 187), the trial was re-scheduled to commence on December 3, 2024 (Doc. 193).

In light of the record, it is evident that Defendant's five substantive pre-trial motions, filed in 2021 and 2023, the need for three evidentiary hearings thereon and additional briefing following the hearings, in conjunction with Defendant's repeated requests for new counsel which resulted in Defendant being appointed four lawyers over the course of this case, all repeatedly served to stop the speedy trial clock, delay trial in this matter, and slow adjudication of this case and Defendant's ability to have this matter fully adjudicated.

In contrast, although the Government moved for extensions of time to file briefs in opposition to several of Defendant's pre-trial motions, and once asked for a continuance of the trial, this delay only minimally weighs against the Government.  The Government's few requests for extensions of time constitute only a small fraction of the time which has elapsed since the date of the Indictment on April 27, 2021.  The causes for these delays were reasonable, cannot be said to have been the result of deliberate efforts by the Government to delay the trial in order to hamper the defense, and, at worst, were the result of overcrowding of the courts.  *See Battis*, 589 F.3d at 679.  Thus, the Government has carried its burden of justifying any delays, albeit brief, that it caused.

As a result, upon consideration of the second *Barker* factor, reason for the delay, the Court finds that this factor weighs against the Defendant in light of the substantive pre-trial motions filed by Defendant, the need for evidentiary hearings thereon, and Defendant's repeated requests for new counsel, as well as Defendant's numerous requests for continuances of hearing dates and trial dates. *See Loud Hawk*, 474 U.S. at 316-317 ("'Having sought the aid of the judicial process and realizing the deliberateness that a court employs in reaching a decision, the defendants are not now able to criticize the very process which they so frequently called upon.'"). Although certain minimal delay is attributable to the Government, the overwhelming majority of the delay since the date of Jones' indictment was caused by Defendant himself.

The Court turns to the third *Barker* factor – the defendant's assertion of his right to a speedy trial. "Whether and how a defendant asserts his right [to a speedy trial] is closely related" to the other *Barker* factors. *Barker*, 407 U.S. at 531. Thus, the strength of a defendant's efforts to assert his right "will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences." *Barker*, 407 U.S. at 531. "[T]he point at which the defendant asserts his right is important because it may reflect the seriousness of the personal prejudice he is experiencing." *United States v. Palmer*, 537 F.2d 1287, 1288 (5th Cir. 1976) (citing *Barker*, 407 U.S. at 531).

Here, liberally construed, Defendant first asserted a possible speedy trial violation on September 11, 2024 in his *pro se* "Motion for Leave to File Additional Motions" (Doc. 195) wherein he requested permission to file three additional pre-trial motions, including a Motion to Dismiss Indictment Based on Speedy Trial Violations. Other than setting forth the title of the motion, Defendant did not provide any justification for this request. Defendant did not re-assert his speedy trial right until the filing of his counseled motion, currently at issue herein, filed on November 19, 2024, to Dismiss for Violation of the Speedy Trial Act and the United States Constitution (Doc. 221).

While Jones did arguably assert his right to a speedy trial, he first did so in a *pro se* motion filed approximately three-and-a-half years after his indictment in April of 2021. The fact that Defendant only first asserted his Speedy Trial Act rights in September of 2024 mitigates the weight of the assertion of his rights. As stated in *Palmer*, "[t]o the extent that promptness in asserting the right is important, then [a defendant's] silence . . . works against him because it suggests that any hardships he suffered were either minimal or caused by other factors." *Palmer*, 537 F.2d at 1288; *see also United States v. Vasquez-Uribe*, 426 F.App'x 131, 138 (3d Cir. 2011) (third *Barker* factor weighed against the defendant when first formal assertion of right to speedy trial did not come for more than one year after initial appearance). As a result, while Defendant did assert his right to a speedy trial, this factor is only afforded minimal weight in Defendant's favor.

Finally, the Court turns to the fourth *Barker* factor: prejudice to the defendant.  With respect to this factor, "the burden of showing prejudice lies with the individual claiming the violation and '[the] possibility of prejudice is not sufficient to support [the] position that ... speedy trial rights [are being] violated.'"  *Hakeem*, 990 F.2d at 760 (quoting *Loud Hawk*, 474 U.S. at 315).

A defendant can establish prejudice in two ways.  "A defendant can establish specific prejudice by showing that he was subject to 'oppressive pretrial incarceration,' that he suffered 'anxiety and concern' about the impending trial, or that his defense was impaired as a result of the delay."  *Battis*, 589 F.3d at 682 (quoting *Barker*, 407 U.S. at 532).  A defendant can also "claim prejudice without providing 'affirmative proof of particularized prejudice'" because "'consideration of prejudice is not limited to the specifically demonstrable.'"  *Id*. (quoting *Doggett*, 505 U.S. at 655).  With respect to this second way to establish prejudice:

> Given that "time's erosion of exculpatory evidence and testimony" can hinder a defendant's ability to prove that his defense was impaired by a delay, the [*Doggett*] Court stated that "we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Id.* at 655-56, 112 S.Ct. 2686. This presumption of prejudice can be mitigated by a showing that the defendant acquiesced in the delay, or can be rebutted if the Government "affirmatively prove[s] that the delay left [the defendant's] ability to defend himself unimpaired."

*Id*.

Here, Jones argues that he is prejudiced for the following reasons:

> The time Jones has spent incarcerated without being brought to trial is clearly oppressive. Jones has been incarcerated for over one thousand three hundred (1,300) days. Moreover, the anxiety and concern are self-evident as he continues to seek his rights as a defendant are protected and enforced. Finally, his defense has been impaired due to the length of the delay. Over three years have elapsed since the original indictment. Jones has had to endure the appointment of multiple attorneys, has been unable to pursue gainful employment and had his ability to mount a viable defense hindered due to the passage of a significant amount of time.

(Doc. 222, at 9-10).

Defendant's assertion that he has suffered "anxiety and concern" is without support.

Prejudice resulting from anxiety and concern cannot be based solely on a general claim of

anxiety.  As explained by the Third Circuit,

> [v]ague allegations of anxiety are insufficient to state a cognizable claim. In *United States v. Dreyer*, 533 F.2d 112 (3d Cir. 1976), we held that a defendant must show that his anxiety extended beyond that which "is inevitable in a criminal case." *Id*. at 116. In order to reach that level, the petitioner must produce evidence of psychic injury. *See id.* at 115-16.

*Hakeem*, 990 F.2d at 762. Contrary to Defendant's assertion otherwise, the Court does not

find that Jones' anxiety and concern are apparent based on the grounds identified.  He

presents no more than a general allegation of anxiety and concern and has produced no

evidence of psychic injury as necessary to make the showing required under this prong of

prejudice.  *See Hakeem*, 990 F.2d at 762.

Jones' vague assertions that his incarceration is "clearly oppressive", that "his

defense has been impaired due to the length of the delay" and that he "has been unable to

pursue gainful employment and had his ability to mount a viable defense hindered due to the passage of a significant amount of time" (Doc. 222, at 9-10) are also without merit. Jones has failed to demonstrate that he has faced substandard conditions or other oppressive factors or conditions as compared to those generally faced by other pretrial detainees. *See Hakeem*, 990 F.2d at 761 (pre-trial detention, coupled with a fourteen-and-one-half month delay, does not permit "an automatic inference of enough prejudice to balance that factor in a [Defendant's] favor without proof of sub-standard conditions or other oppressive factors beyond those that necessarily attend imprisonment."); *United States v. Claxton*, 766 F.3d 280, 737-738 (3d Cir. 2014) ("[Defendant] has given no indication that he faced substandard conditions as compared to those generally associated with the transfer of prisoners. . . ."). Furthermore, Defendant has not pointed to any evidence of specific prejudice to show that his defense was impaired as a result of the delay, nor does Defendant state in what way his defense has been hindered or prejudiced. Even accepting that Defendant need not show specific prejudice to demonstrate prejudice as a result of the passage of time or any alleged "excessive delay", as previously addressed, the delay in this case was largely caused by Defendant and, any delay caused by the Government, was done with Defendant's concurrence therein.[3]

---

[3] Jones' assertion of prejudice due to "[having] had to endure the appointment of multiple attorneys" (Doc. 222, at 10) is insincere and, in fact, weighs against the Defendant. Jones himself requested that his second and third counsel be replaced, has also requested that his current counsel be replaced, and at least two of his former lawyers alleged that Jones engaged in threatening behavior which caused them to agree with Jones' request that the Court appoint Defendant with new counsel.

Therefore, the Court finds that the fourth *Barker* factor does not weigh in Jones' favor as he has not established that he suffered specific prejudice or that he is entitled to a presumption of prejudice due to the delay in commencing trial in this matter.

As a result of the above-explained analysis, in balancing the *Barker* factors, the reason for the delay and the prejudice factors both weigh in the Government's favor. However, the delay was sufficient to trigger the *Barker* analysis and Jones did arguably assert his speedy trial rights (albeit very belatedly), such that these factors weigh in Jones' favor, however slightly.  Nevertheless, a significant portion of the delay in this case was attributable to Jones' own conduct, and he has not established that he has suffered specific or presumed prejudice.  Thus, in weighing the *Barker* factors, the balance weighs in favor of the Government, and Jones has failed to demonstrate that his Sixth Amendment speedy trial right was violated.

### III. Conclusion

For the afore-discussed reasons, Defendant Jones' Motion to Dismiss for Violation of the Speedy Trial Act and the United States Constitution (Doc. 221) will be denied for the reasons set forth in this Memorandum Opinion.

A separate Order follows.

Robert D. Mariani
United States District Judge