THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | 3:21-CR-126 |
| | : | (JUDGE MARIANI) |
| MICHAEL JONES, JR., | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

On April 27, 2021, a federal grand jury indicted Defendant Michael Jones, Jr., in a

10-count Indictment, charging him as follows:

- Conspiracy to Distribute and Possess with Intent to Distribute Cocaine Base and Fentanyl in violation of 18 U.S.C. § 846 (Count 1);

- Possession with Intent to Distribute Cocaine Base in violation of 18 U.S.C. § 841(a)(1) (Counts 2, 4);

- Possession with Intent to Distribute Fentanyl in violation of 18 U.S.C. § 841(a)(1) (Counts 3, 5);

- Possession with Intent to Distribute Methamphetamine in violation of 18 U.S.C. § 841(a)(1) (Count 6);

- Possession of a Firearm in Furtherance of Drug Trafficking in violation of 18 U.S.C. § 924(c) (Count 7);

- Prohibited Person in Possession of a Firearm in violation of 18 U.S.C. § 922(g) (Count 8);

- Possession of a Stolen Firearm in violation of 18 U.S.C. § 922(j) (Count 9);

- Maintaining a Drug Involved Premises in violation of 21 U.S.C. § 856(a)(2) (Count 10).

(Doc. 1).[1]

Following the filing of six counseled substantive pre-trial motions by Defendant

Jones (Docs. 26, 97, 99, 101, 103, 221) from 2021 through 2024, as well as several

requests for continuances, a jury trial commenced on December 2, 2024. On December 10,

2024, the jury returned a verdict finding Defendant guilty of Counts 1, 2, 3, 4, 5, 6, 7, 9, and

10. (Doc. 247). Following the jury's verdict as to Counts 1-7 and 9-10 of the Indictment, the

jury heard evidence on, and deliberated as to, Count 8 of the Indictment (Prohibited Person

in Possession of a Firearm). The jury thereafter returned a verdict of guilty as to Count 8.

(Doc. 250).

Presently before the Court are Defendant Jones' "Nunc Pro Tunc Post-Trial Motion

for Judgment of Acquittal or New Trial" (Doc. 271) and "Motion for a New Trial Pursuant to

Rule 33" (Doc. 273). For the reasons set forth below, the Court will deny the defendant's

motions.

## II. STANDARD OF REVIEW

A defendant may move for a judgment of acquittal pursuant to Federal Rule of

Criminal Procedure 29. Where "the jury has returned a guilty verdict, the court may set

aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c)(2).

---

[1] Counts 1, 2, and 4 of the Indictment were amended on June 15, 2021, to reflect that the cocaine seized from Jones' vehicle and residence was cocaine, not cocaine base. (*See* Doc. 21).

> In ruling on a motion for judgment of acquittal made pursuant to Fed.R.Crim.P. 29, a district court must "'review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilty beyond a reasonable doubt based on the available evidence.'" *United States v. Smith,* 294 F.3d 473, 476 (3d Cir. 2002) (quoting *United States v. Wolfe,* 245 F.3d 257, 262 (3d Cir. 2001)). A finding of insufficiency should be "'confined to cases where the prosecution's failure is clear.'" *Smith,* 294 F.3d at 477 (quoting *United States v. Leon,* 739 F.2d 885, 891 (3d Cir. 1984)). Courts must be ever vigilant in the context of Fed.R.Crim.P. 29 not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury. *See United States v. Jannotti,* 673 F.2d 578, 581 (3d Cir.) (en banc) (trial court usurped jury function by deciding contested issues of fact), *cert. denied,* 457 U.S. 1106, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982); *see also* 2A Charles A. Wright, FED. PRAC. & PRO. (Criminal 3d) § 467 at 311 (2000) ("A number of familiar rules circumscribe the court in determining whether the evidence is sufficient ... It is not for the court to assess the credibility of witnesses, weigh the evidence or draw inferences of fact from the evidence. These are functions of the jury.").

*United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005). The Third Circuit has long

advised that, in considering a post-verdict judgment of acquittal, the court "must uphold the

jury's verdict unless no reasonable juror could accept the evidence as sufficient to support

the defendant's guilt beyond a reasonable doubt." *United States v. Fattah*, 914 F.3d 112,

183 (3d Cir. 2019) (citing *United States v. Coleman*, 811 F.2d 804, 807 (3d Cir. 1987)). In

*United States v. Tyler*, the Third Circuit again reiterated the well-recognized standard:

> This review is "highly deferential" to the factual findings of the jury, and we "must be ever vigilant ... not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting [our] judgment for that of the jury." *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430 (3d Cir. 2013) (en banc) (alteration and omission in original) (quoting *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005)).

> Thus, even if the evidence adduced is consistent with multiple possibilities, our role as a reviewing court is to uphold the jury verdict … as long as it passes the bare rationality test. Reversing the jury's conclusion simply because another inference is possible – or even equally plausible – is inconsistent with the proper inquiry for review of sufficiency of the evidence challenges, which is that [t]he evidence does not need to be inconsistent with every conclusion save that of guilt if it does establish a case from which the jury can find the defendant guilty beyond a reasonable doubt. It is up to the jury – not the district court judge or our Court – to examine the evidence and draw inferences. Unless the jury's conclusion is irrational, it must be upheld.

> *Id.* at 433 (alteration in original) (internal quotation marks and citation omitted).

956 F.3d 116, 122-123 (3d Cir. 2020).

A defendant may also move for a new trial pursuant to Federal Rule of Criminal Procedure 33.  Rule 33 provides in pertinent part that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. . ." Fed. R. Crim. P. 33(a).

> "Unlike an insufficiency of the evidence claim, when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." *United States v. Johnson,* 302 F.3d 139, 150 (3d Cir. 2002). However, even if a district court believes that the jury verdict is contrary to the weight of the evidence, it can order a new trial "only if it believes that there is a serious danger that a miscarriage of justice has occurred – that is, that an innocent person has been convicted." *Id.* (citation and quotation marks omitted). . . . Such motions are not favored and should be "granted sparingly and only in exceptional cases." *Gov't of Virgin Islands v. Derricks,* 810 F.2d 50, 55 (3d Cir. 1987) (citations omitted).

*United States v. Silveus*, 542 F.3d 993, 1004-1005 (3d Cir. 2008). The defendant "bears the burden of persuading the trial court that the interest of justice requires the grant of a new trial." *United States v. Ray*, 2016 WL 5787345, at *3 (M.D. Pa. 2016) (quoting *United States v. Hammer*, 25 F.Supp.2d 518, 534 (M.D. Pa. 1998)) (citing *United States v. Amirnazmi*, 648 F. Supp. 2d 718, 719 (E.D. Pa. 2009)). Where a defendant alleges that the cumulative effect of trial errors resulted in an unfair trial, a new trial is required "only when 'the errors, when combined, so infected the jury's deliberations that they had a substantial influence on the outcome of the trial.'" *United States v. Thornton*, 1 F.3d 149, 156 (3d Cir. 1993) (quoting *United States v. Hill*, 976 F.2d 132, 145 (3d Cir. 1992)).

### III. ANALYSIS

### A. Motion for a New Trial Pursuant to Rule 33

Defendant Jones' "Motion for a New Trial Pursuant to Rule 33" (Doc. 273) moves for a new trial "on the grounds of newly discovered evidence." In support of this motion, Defendant states that newly obtained EZPASS records show that he traveled to Philadelphia on March 11, 2021, and not on March 12, 2021, as stated by a Confidential Informant ("CI") and Officers Lamm and Ferrence, at trial. Defendant submits that the EZPASS evidence was unavailable to him at the time of trial, is material, and "would likely [have] resulted in acquittal" and thus "the interests of justice require that the Court grant" his motion for a new trial. (*See generally*, Doc. 274).

5

Third Circuit precedent "instruct[s] that five requirements must be met before a

district court may grant a new trial on the basis of newly discovered evidence:"

> (a) the evidence must be in fact, newly discovered, i.e., discovered since the trial;
> (b) facts must be alleged from which the court may infer diligence on the part of the movant;
> (c) the evidence relied on, must not be merely cumulative or impeaching;
> (d) it must be material to the issues involved; and
> (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

*United States v. Brown*, 595 F.3d 498, 511 (3d Cir. 2010) (quoting *United States. v. Cimera,*

459 F.3d 452, 458 (3d Cir. 2006) ((quoting *United States v. Iannelli,* 528 F.2d 1290, 1292

(3d Cir. 1976))) (hereinafter "the *Iannelli*" factors or requirements); *see also*, *United States v.*

*Saada*, 212 F.3d 210, 216 (3d Cir. 2000).  A "movant has a heavy burden in meeting these

requirements."  *Saada*, 212 F.3d at 216 (internal quotation marks omitted).  The movant's

failure to meet even one of the five factors "is a sufficient basis to deny a motion for a new

trial."  *United States v. Jasin*, 280 F.3d 355, 365 (3d Cir. 2002).

Defendant Jones fails to establish that the EZPASS evidence was "newly

discovered" or to present any facts allowing this Court to "infer diligence" on his part in

obtaining this evidence, as necessitated by the first two *Iannelli* requirements.

> The test to determine whether evidence is "newly discovered" is both objective and subjective: Evidence is not "newly discovered" if it "was [actually] known or could have been known by the diligence of the defendant or his counsel." *See United States v. Bujese,* 371 F.2d 120, 125 (3d Cir. 1967).

*Cimera*, 459 F.3d at 461.  *Cf. Jasin*, 280 F.3d at 368 ("the unambiguous language of Rule

33 . . . contemplates granting of a new trial on the ground of 'newly discovered evidence' but

says nothing about newly available evidence"); *id*. ("'newly available evidence' is not

synonymous with 'newly discovered evidence'").  Further, in evaluating whether the movant

has alleged facts from which the court may infer the movant's diligence, the Third Circuit

has "consistently focused [its] inquiry on whether the evidence at issue could have been

discovered before or at the time of trial with the exercise of reasonable diligence on behalf

of the defendant and/or his counsel."  *United States v. Kelly*, 539 F.3d 172, 182 (3d Cir.

2008).

Here, Jones' EZPASS records do not constitute "newly discovered evidence."

Although the specific content of those records *may* not have been "actually known" to the

defendant and his counsel, that is solely because neither Defendant nor his counsel

subpoenaed or otherwise sought those records prior to trial.[2]  As noted by the Government,

the EZPASS evidence "was in existence at the time of the investigation, suppressions

motions, and trial."  (Doc. 284, at 10).  As an objective matter, for the reasons set forth *infra*,

the evidence is not newly discovered where it clearly could have been known by the

diligence of Jones or his counsel.

---

[2] At trial, Michael Jones testified that he left for Philadelphia on March 11, 2021.  Thus, the contents of the EZPASS records arguably were "actually known" to Defendant well-prior to trial where he admittedly knew the day when he believed he had traveled on the Pennsylvania Turnpike.  However, even assuming that the contents were not known to Defendant and his counsel, they could have easily been known by the diligence of Defendant or his counsel.

Defendant's present motion asserts that "he was unaware that he would require [the EZPASS records] until he heard the testimony from the police and the CI" and therefore he was diligent in obtaining the "new" evidence. (Doc. 274, at 5). This assertion is directly contradicted by the record. This Court held an evidentiary hearing on Defendant's Motion to Suppress Physical Evidence (Doc. 26) on April 5, 2022, and a second evidentiary hearing to supplement the record on May 20, 2022. At the hearings, the Government presented testimony of several witnesses, including Pennsylvania State Trooper Jeffrey Lamm and his CI, Amanda Barton. In its memorandum opinion denying Defendant's suppression motion, this Court summarized the testimony of the witnesses, including the following:

> On March 10, 2021, Barton also informed Lamm that, during the controlled buy with Vickers [that same day], she had learned that Jones was planning on making a trip to Philadelphia "within the next few days to re-up or obtain more narcotics." (Test. of Lamm, Hr'g Tr., Apr. 5, 2022, at 12).
>
> On March 12, 2021, Barton informed Lamm that Jones was going to "leav[e] shortly to go to Philadelphia to obtain heroin, fentanyl and crack cocaine", and would be leaving with a man named Clinton Cole in Jones' vehicle. (Test. of Lamm, Hr'g Tr., Apr. 5, 2022, at 13; Test. of Barton, Hr'g Tr., May 20, 2022, at 34). Surveillance units were set up "at several locations trying to find the vehicle" in order to "put eyes on it and to see who was actually driving it and where they were going." (Test. of Lamm, Hr'g Tr., Apr. 5, 2022, at 14). The surveillance units "picked them up" at the residence registered to Jones' vehicle, were able to identify that Jones and Cole were in the vehicle, and "followed [Jones and Cole] on to the Cross Valley Expressway onto 115 South and, ultimately, up to the Pennsylvania Turnpike, where they committed to 476 southbound." (Test. of Lamm, Hr'g Tr., Apr. 5, 2022, at 14).

(Doc. 58, at 6) (underline added). Defendant was therefore aware, *over two-and-a-half years prior to trial*, that Barton and Lamm's testimony at trial, if consistent with their prior

8

testimony, would include statements that Jones traveled to Philadelphia on March 12, 2021,

and not on March 11, 2021.  Defendant was also aware prior to trial that EZPASS data

could be obtained that may have aided in his defense. (*See e.g.*, Doc. 191, at 3 ("Brief in

Support [ – ] Motion for an Franks Hearing Based on Falsehood[,] Incorrectness of

Statement of the Affidavit of Probable Cause[,] Newly Discovered Evidence Fed. R. Crim

33(b)(1)", filed *pro se* on September 4, 2024, wherein Jones asserts that "[t]he Pennsylvania

Turnpike footage from EZ-Pass can be subpoenaed" and would show that Barton was

"coached".)).[3]  Additionally, Jones testified in his own defense at trial, wherein he stated that

he had travelled to Philadelphia on March 11, 2021.  No argument can be made that he did

not know, as of the time of Lamm and Barton's testimony in 2022, that these witnesses'

testimony may have been incorrect as to the date of his departure and subject to

impeachment, most easily through the receipt of EZPASS records or other evidence

showing his travel route.

    The record clearly demonstrates that the EZPASS records at issue here were not

newly discovered and could have readily been discovered prior to, or at the time of, trial,

---

[3] Even if Jones had asserted that he asked his prior counsel to obtain the EZPASS records prior to trial, and counsel refused, this alone would not form the basis for a new trial.  *See United States v. Knight*, 568 F.App'x 178, 181-182 (3d Cir. 2014) ("As the District Court noted, McKnight averred in his Rule 33 motion that he had known of the misstatement before his trial, and had unsuccessfully asked his counsel to pursue this concern at the suppression hearing held five days before trial. Further, the docket shows McKnight and his counsel could have accessed the arrest warrant seven months before trial, and thus he should have known of any false information in the warrant well before his sentencing hearing. Accordingly, McKnight cannot satisfy the first requirement for a new trial, and the District Court did not err in denying his motion.").

and Defendant has alleged no facts from which this Court can excuse the lack of diligence of Jones and his counsel in obtaining the EZPASS records prior to trial.

Where Defendant has failed to satisfy the first and second *Iannelli* factors, Defendant's motion must be denied. *See Jasin*, 280 F.3d at 365 n.9 (". . . if a court determines as a matter of law that evidence is not newly discovered, then no matter what the court's conclusions are as to the other *Iannelli* factors, it must deny the defendant's Rule 33 motion."). The Court will nonetheless briefly address the remaining factors to fully address the issue presented.

The third *Iannelli* element requires that the EZPASS evidence "must not be merely cumulative or impeaching." Defendant argues that the EZPASS records demonstrate that the "evidence [was] factually inaccurate as to what was presented to the jury and undermined the credibility of" the police and CI at trial. (Doc. 274, at 5). Preliminarily, this argument underscores the fact that Defendant believes that the EZPASS records consist of purely impeachment evidence. Although District Courts "should not ignore a claim that there has been a miscarriage of justice just because the newly discovered evidence supporting the claim could be categorized as impeachment in character", the Third Circuit has explained that "[w]hen asked to grant a new trial solely on the basis of new impeachment evidence, a court carefully should examine whether the defendant has demonstrated the necessary exculpatory connection between the evidence and the offense

or has demonstrated that the newly discovered evidence totally undermined critical inculpatory evidence." *United States v. Quiles*, 618 F.3d 383, 391 (3d Cir. 2010).

Defendant's focus on the testimony of Barton and police officers stating that Jones traveled, and was observed traveling, to Philadelphia on March 12, 2021, instead of March 11, 2021, does nothing to undermine the inculpatory evidence upon which Defendant was convicted. The evidence at trial demonstrated that on March 14, 2021, consistent with the information provided by Barton to Lamm that Defendant Jones would be returning from Philadelphia that same day and that Jones generally placed illegal controlled substances in the trunk of his car, the defendant was, in fact, seen returning from Philadelphia, was pulled over as he approached Wilkes-Barre, and controlled substances were later found in a speaker box in the trunk of his car following a search of his vehicle at the Wilkes-Barre Police Department. Jones has not demonstrated any exculpatory connection between the EZPASS records and any of the offenses of which he was convicted. The EZPASS records, purportedly showing that Jones travelled to Philadelphia on the evening of March 11, 2021, and not on March 12, 2021, as testified to by police officers and Barton at trial, is nothing more than impeachment evidence and unquestionably cannot support a conclusion that there has been a miscarriage of justice.

The fourth *Iannelli* factor requires that the newly discovered evidence must be material to the issues involved. The exact day that Jones left for Philadelphia is not material to the issues in this case or the charges that Jones faced at trial. As set forth, *supra*, based

11

on Barton's information provided to the police, Jones was observed by law enforcement returning from Philadelphia on March 14, 2021, he was pulled over by the police, and controlled substances were discovered in the vehicle. Thus, while the date of March 14, 2021, is material to the issues of this case, the dates of March 11 and 12, 2021, are relevant, if at all, solely for context, and are immaterial to the actual issues to be decided by the jury.

Finally, *Iannelli* requires that the newly discovered evidence "must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal." In analyzing this factor, "a district court is required to make a credibility determination as part of its probability-of-acquittal inquiry." *Kelly*, 539 F.3d at 189. In making this determination, a District Court's focus "should be on whether a jury probably would reach a different result upon hearing the new evidence." *Id*. The new evidence should not be viewed "in a vacuum", but rather must be weighed "against all of the other evidence in the record, including the evidence already weighed and considered by the jury" at the defendant's trial. *Id*. *See also*, *id*. at 190 ("a credibility assessment is required as part of *Iannelli*'s probability-of-acquittal analysis, and [the District Court] should take into account all of the evidence that a jury would be likely to hear and consider were the defendant granted a new trial.").

The Court assumes, for purposes of Defendant's present motion, the authenticity of the EZPASS records now submitted by the defendant as evidence that he traveled to

Philadelphia on March 11, 2021.  Regardless of the authenticity and accuracy of this

document, in light of the overwhelming evidence of Defendant's guilt presented at trial as to

each count of the Indictment, this current evidence falls far short from probably producing

an acquittal on any of the charges Jones faced.

In support of his argument that the EZPASS evidence would probably produce an

acquittal, Jones asserts that this evidence "raises reasonable doubt about the credibility of

the witnesses and the overall integrity of the Government's case-in-chief."  (Doc. 274, at 7).

This sweeping and general statement is insufficient for Defendant to meet his burden.

Jones was convicted of ten counts in this case, but fails to identify which of these ten counts

he believes would now result in an acquittal due to the discovery of the EZPASS records,

leaving this Court to guess how a record showing Defendant may have traveled to

Philadelphia one day earlier than the date presented by several witnesses at trial could

possibly affect each and every count of conviction.  This is particularly so where the

testimony of Officers Lamm and Ferrence as to the date on which Jones traveled to

Philadelphia consisted of only a small fraction of their overall trial testimony and this

evidence is not relevant to the actual charges in this case.  Furthermore, it is undisputed

that Jones did, in fact, travel to Philadelphia several days prior to the stop and subsequent

search of his vehicle on March 14, 2021.  Whether he traveled on March 11 or March 12 is

immaterial to the jury's analysis of Jones' guilt as to the controlled substances found in the

vehicle on March 14, 2021, as well as whether he unlawfully possessed a firearm and maintained a drug premises.

Although the Court does not find that a one-day discrepancy in the date on which Lamm, Ferrence, and Barton testified that Jones left for Philadelphia affects their credibility to such an extent that a jury would have disbelieved their other testimony, even if giving the credibility of these individuals minimal weight, the Government presented a significant amount of other evidence through the testimony of other witnesses and the presentation of physical evidence to support Jones' guilt at trial as to each of the charged counts, including, but not limited to:

- Testimony by Stefanie Vickers that, during the relevant time period of the charged conspiracy, she would get drugs from Jones and sell them for him, including selling 5-6 packages of fentanyl for him every day; that Vickers knew of other people also selling drugs on Jones' behalf; that her husband, Clinton Cole, went to Philadelphia with Jones in March of 2021 and was arrested on March 14, 2021, when returning from Philadelphia with Jones; and that Jones told her that he had a stash house.

- Testimony by Clinton Cole that he was using crack cocaine in 2021, which was supplied to him by Jones; that he went to Philadelphia with Jones, in Jones' car, in March of 2021 to buy drugs and was pulled over by law enforcement on March 14, 2021, when returning from that trip to Philadelphia; that following their detention at the Wilkes-Barre Police Department that same day, Jones told him to go to 325 High

14

Street (the "stash house" alleged by the Government) if he needed anything; and that Jones told him to tell the police that "Mexicans" put the speaker box outside and then "crackheads" sold it to him.

- Testimony from PSP Officer Mark Conrad, accompanied by video footage, detailing the March 14, 2021, traffic stop and initial search of Jones' vehicle; that he conducted a canine search of Jones' vehicle at the Wilkes-Barre Police Department and that his canine "alerted" near the trunk of the vehicle; that he aided in the search of the vehicle after a search warrant was obtained; and that narcotics (including cocaine and fentanyl) and drug paraphernalia were found in the speaker box that he and other law enforcement removed from the trunk of the vehicle.

- Testimony of Officer Novackowski that, on the evening of March 14, 2021, she allowed Jones to make a phone call from the police department where he told "his girl" to get a box from the top shelf of his closet, take $12,000, and put it in his books.

- Testimony from Collen Burns, the owner of 325 High Street, stating that she rented the house to Jones in approximately September of 2020, that Jones was responsible for the utilities, and that Jones paid the monthly rent for the house in cash.

- Testimony from Jared Hiester, admitted as an expert in DNA analysis and as a forensic DNA scientist, that Jones' DNA matched DNA found on the Taurus G2 9mm (the stolen firearm forming the basis of the charges in Counts 8 and 9).

The testimony of these witnesses was also buttressed by the presentation of the actual controlled substances and drug paraphernalia recovered from Jones' vehicle and 325 High Street, and by a number of expert reports confirming the identity and weights of the controlled substances.

For these reasons, without further factual or legal support from the defendant, the EZPASS records can certainly not be said to affect "the overall integrity of the Government's case-in-chief", as claimed by Defendant (Doc. 274, at 7), nor can this Court find that the introduction of the EZPASS records at trial, as purportedly newly discovered evidence, "would probably produce an acquittal."

Because Defendant has failed to meet any of the *Iannelli* requirements, the Court will deny his "Motion for a New Trial Pursuant to Rule 33" (Doc. 273).

### B.  Post-Trial Motion for Judgment of Acquittal or New Trial

Defendant's "Nunc Pro Tunc Post-Trial Motion for Judgment of Acquittal or New Trial" (Doc. 271), filed pursuant to Federal Rules of Criminal Procedure 29 and 33, asserts that "no rational trier of fact could have found the essential elements to the crimes charged beyond a reasonable doubt" (Doc. 272, at 6).  In support of this motion, Defendant argues,

> The search warrant [for Defendant's vehicle] obtained by police was dated March 14, 2021 at 9:30pm. The meta-data of the photographs taken during the course of the search show a time frame between 10:42:20pm through 10:53:48pm. However, the criminal complaint, which lists with particularity the number of narcotics and their weight were discovered from the search of the vehicle and which lists a date of March 14, 2021 and time of 9:31:33pm. The inference drawn here shows that police secured a search warrant at 9:30pm and then within a minute and thirty-three seconds, police were able to find,

identify and weigh the narcotics. Furthermore, it shows that the criminal complaint, again with the number of narcotics and their weight were discovered prior to the pictures taken during the course of the search of the vehicle, by nearly an hour and fifteen minutes.

(Doc. 272, at 6-7). Defendant thus alleges that "[t]he verdict in this case 'falls below the threshold of bare rationality' when considering the impossibility that law enforcement would be able to secure a search warrant at 9:30pm on March 14, 2021 and then be able to locate, identify and weigh the numerous controlled substances found in the Defendant's vehicle." (*Id*. at 7) (quoting *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 431 (3d Cir. 2013)).

Preliminarily, Defendant's motion (Doc. 271) is untimely, a fact acknowledged by the defendant by his titling of the motion as one filed "nunc pro tunc.". Pursuant to Rule 29, "[a] defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29(c)(1). Similarly, Rule 33 requires that "[a]ny motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." *Id*. at 33(b)(2).[4] Here, on December 10, 2024, the jury returned verdicts of guilty on all counts of the Indictment against Defendant Jones. Defendant's *nunc pro tunc* motion was filed on May 5, 2025, approximately 6 months after the jury's verdict.

---

[4] Unlike Jones' "Motion for a New Trial Pursuant to Rule 33" (Doc. 273), addressed *infra*, Jones' motion for judgment of acquittal or new trial (Doc. 271) does not assert any newly discovered evidence. Rather, Defendant admits that "[o]n or about November 19, 2021, the Government complied with Defendant's request [for the meta-data of the photographs taken during the search of Jones' car] and turned over the meta-data. . ." (Doc. 272, at 4).

Defendant's motion does set forth any reason or basis for this Court to find excusable

neglect such that the 14-day period would not apply to his present motion. *See* Fed. R.

Crim. P. 45(b)(1)(B) ("When an act must or may be done within a specified period, the court

on its own may extend the time, or for good cause may do so on a party's motion made . . .

after the time expires if the party failed to act because of excusable neglect."). As such, this

Court would ordinarily be without authority to grant Defendant's untimely motion.

Nonetheless, the Supreme Court has held that motions for judgment of acquittal or for a

new trial are non-jurisdictional and are therefore subject to forfeiture where the Government

fails to raise a timeliness defense. *See Eberhart v. United States*, 546 U.S. 12, 18-19

(2005) (Fed. R. Crim. P. 29 and 33 are claim-processing rules which "assure relief to a party

properly raising them, but do not compel the same result if the party forfeits them" and thus

where the Government "fail[s] to raise a defense of untimeliness until after the District Court

… reached the merits, it forfeit[s] that defense" and a lower court errs in not proceeding to

the merits); *see also, Carlisle v. United States*, 517 U.S. 416 (1996) (concluding that the

District Court has no authority to grant defendant's Rule 29 motion for judgment of acquittal

filed one day late where the Government raised timeliness defense). In this case, for

reasons unknown to the Court, the Government only addresses the merits of Defendant's

motion and fails to assert the untimeliness of Defendant's motion. Had the defense been

raised, this Court would have been statutorily compelled to deny Defendant's motion without

further consideration.  However, the Government having forfeited its timeliness defense, this

Court proceeds to the merits of Defendant's motion.

Here, Defendant Jones is asking this Court to grant a motion for acquittal or to grant

him a new trial because evidence, which was available to him at the time of trial but which

was not presented and therefore not considered by the jury, renders the verdict in this case

"below the threshold of bare rationality."  Jones relies on the following three documents in

support of his argument: (1) the search warrant for Jones' vehicle dated March 14, 2021, at

9:30 p.m. (Doc. 272-1); (2) the "Vehicle Search Report" listing the time frame of the meta-

data of the photographs taken during the course of the search as taken between 10:42:20

p.m. through 10:53:48 p.m. (Doc. 272-3); and (3) the Affidavit of Probable Cause, dated

March 14, 2021 at 9:31:33 p.m., attached to the criminal complaint, listing the number of

narcotics and their weight found during the search of the vehicle (Doc. 272-2, at 6).  At trial,

the search warrant was admitted into evidence as Government's Exhibit 48.  Neither the

criminal complaint and its accompanying affidavit of probable cause nor the document

listing metadata times on the photographs taken during the search of the car were

introduced at trial by either the Government or the defense.  Defendant now presents this

evidence, which was in his possession well-before the commencement of trial and never

seen by the jury, and asks this Court to speculate as to the meaning of the various times set

forth in the documents and, further, to assume, without any basis, that no rational jury, or

this Court, could find Defendant guilty of the offenses for which he was convicted based on

the times listed in the three documents. There could be a number of explanations for the different times listed in the three documents and why they may appear inconsistent, but this issue was not raised before the jury for its consideration, nor was the Government provided any opportunity to elicit testimony which may address the various times set forth in the three documents. Defendant not only asks this Court to usurp the role of the jury in finding facts and weighing credibility, but also asks the Court to engage in pure speculation to find that this evidence demonstrates that the verdict is below a "threshold of bare rationality." The Court will not engage in such a baseless endeavor.[5] Finally, for the reasons set forth, *supra*, in addressing the fifth *Iannelli* factor in Defendant's "Motion for a New Trial Pursuant to Rule 33" (Doc. 273), it is evident that a rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence at trial, such that Defendant is not entitled to a judgment of acquittal, and that the interests of justice also do not require the grant of a new trial.

---

[5] Of note, if Defendant truly believed that these documents were relevant to his defense or undermined the Government's evidence, he fails to explain why this evidence was not presented at trial. To permit a defendant to either negligently or purposefully withhold the presentation of evidence at trial which he believes may be exculpatory or serve as impeachment material, only to allow this evidence to form the basis of a successful Rule 29 or Rule 33 motion following a conviction would yield absurd results and undercut the purpose and integrity of trial.

## IV. Conclusion

For the reasons set forth herein, Defendant Jones' "Motion for a New Trial Pursuant to Rule 33" (Doc. 273) and "Nunc Pro Tunc Post-Trial Motion for Judgment of Acquittal or New Trial" (Doc. 271) will be denied.  A separate Order follows.

Robert D. Mariani
United States District Judge